Philips, District Judge.
There are various counts in the petition. The substantive charge in each is that the defendant, a common carrier, charged the plaintiff unreasonable and unjust rates on car loads of coal shipped from Higginsville to Kansas City, Mo.; that 45 cents per ton was the just and reasonable rate for such service, whereas defendant exacted more than 65 cents per ton. Judgment is prayed for three times the amount of the excess, as by statute in such case made and provided. To this petition defendant interposes a demurrer. It demurs to the first 48 counts for the reason that the causes of action are barred by the statute of limitations, and to all of the counts on the ground that they do not state facts sufficient to constitute a cause of action.
The question broadly raised and argued by both counsel is whether or not a railroad company which has not exacted a charge in excess of the maximum rate fixed by the state is nevertheless liable to an action for triple damages, as for extortion, as prescribed in the act of the legislature adopted by the extra session of 1887, p. 15. The plaintiff contends that this statute gives to the shipper a right of action for an unreasonable charge made by the carrier, whether or not the sum charged be more or less than the maximum prescribed by the railroad commissioners; while the defendant contends that no charge made by it can be unlawful, subject to the statutory pains and penalties, when the charge made is within the limits prescribed by the state’s authority. By the first section of this act all railways in the state are declared to be public highways and common carriers; and all charges made for services in the transportation of freight shall be reasonable and just; “and all unreasonable and unjust charges for such services are prohibited, and declared unlawful.” By sections 10 and 11 a right of action is given against such carrier for doing an act or thing in said act prohibited, or declared to be unlawful, or omitting to do anything enjoined thereby, and giving to the person injured three times the amount of damages sustained, by suit in any circuit court of any county or city where the road is operated. But these are not all the provisions of this statute, and we must look to the enactment as an entirety to discover its real purport and proper construction. As is said in In re Bomino’s Estate, 83 Mo. 441:
*718 “Among the recognized canons of interpretation of statutes are the following: The intention of the legislative act may often be gathered from a view of the whole and every part of a statute taken and compared together. When the true intention is accurately ascertained, it will always prevail over the literal sense of the terms. The occasion and necessity of the law, the mischief felt, and the object and remedy in view, are to be considered. When the expression in the statute is special or particular, but the reason general, the special shall be deemed general, and the reason and intention of the lawgiver will control the strict letter of the law when the latter would lead to palpable injustice, contradiction, and absurdity, (1 Kent, Comm. 461, 462;) and when it is doubtful whether a certain thing falls within the terms used in an act, it is proper to resort to other statutes to ascertain the intention of the legislature in-the enactment of the general statute.”
By the expressed declaration of the statute in the concluding paragraph, “this act is not intended to repeal any law now in force, unless in direct conflict.therewith, but is intended to be supplemental to such laws.”
Under the then existing statutes of the state the legislature had undertaken the task of regulating freight rates of railroads. It had prescribed a maximum charge for the class of property in question, and made various provisions against extortionate charges, unjust discriminations, and combinations. It had created the office of railroad commissioners, and invested them with various powers of supervision over the railroads of the state. The general policy of the statute was and is to prevent extortionate charges, unjust discriminations, combinations, and favoritism. The railroad commissioners were empowered to reduce the rates of railroads, either in general or special classes, whenever, in their judgment, it could be equitably done, and the railroad companies were bound by the decision of the commissioners; “and every violation by any company charging a greater or higher rate” was declared a misdemeanor, and, on conviction, should pay a fine of not less than $20 nor more than $200 for each and every offense; and the injured party should have a right of action against the carrier before any court of competent jurisdiction for the recovery of three times the amount taken or demanded in excess of the rates prescribed. Rev. St. Mo. 1889, §§ 2675, 2676, 2679, 2682, 2684, 2686. By the act of 1887 the legislature simply sought, by additional powers conferred on the railroad commissioners, and restrictions, obligations, and liabilities imposed upon the common carrier, to still further accomplish the policy of the state in regulating the rate of freight charges. The first 'section opens with the declaration of what was already an existing common-law axiom, and reaffirmed in section 14, art. 12, of the state constitution, that such roads are public highways and common carriers; and therefore they are subject to the legislative power to interdict unjust and unreasonable charges for the performance of their duty to the public.
Among its salient and more important provisions are the following: Such common carrier shall neither directly nor indirectly, by any special rate, rebate, drawback, or any device, take from one citizen less than from another for a like service rendered; nor charge more for transport *719 ing a car of freight then it charges at the same time for several cars of like class, etc.; nor give advantages to any person or corporation in the transportation of goods over any other person or corporation. It shall not receive a greater compensation in the aggregate for transportation of property, etc., over a shorter than a longer distance. It is prohibited from pooling of freights. It is required to establish and publish its schedule of rates, which shall be “reasonable and just, and shall not in any case exceed the maximum rates which are or may hereafter be established by law.” Copies of such schedules shall be filed with the railroad commissioners, and thenceforth such schedules, not being in excess of the statutory maximum rates, shall be deemed the established rates, until the same are changed as in this act provided. It shall give 10 days’ notice of any proposed change, except when the rates are to bereduced, in which latter event notice shall be publicly posted, etc. “When any such common carrier shall have established and published its rates in compliance with the provision of this act, the same, not being in excess of any statutory maximum rates now or that may be hereafter in force, it shall be unlawful for any such common carrier to charge, collect, or receive a greater or less compensation, etc., than is specified in such published schedule. * * * It shall be the duty of the railroad commissioners to see that all schedules of rates adopted by common carriers are reasonable and just; and they may, upon complaint of any person, or upon their own motion without complaint, make inquiry from time to time, and determine whether the schedule of rates prepared and adopted by any such common carrier is reasonable and just.” The word “may” in the last clause of the above quotation should be construed to mean “shall,” on the settled rule of the construction of statutes that, where rights of third persons are involved, or the public good requires it, such term is to be regarded as mandatory. Leavenworth & D. M. R. Co. v. Platte Co., 42 Mo. 171; Steines v. Franklin Co., 48 Mo. 167. Other sections of the act make this still clearer. By section 8 it is provided that, if any such common carrier shall neglect or refuse for 30 days to file a published schedule of rates, it shall be the duty of the railroad commissioners to make and print “a schedule of reasonable rates for such common carrier, and deliver copies of same to such carrier. * * * A copy of such schedules so made by said board, certified by the secretary of such board, shall, in proceedings wherein is involved the reasonableness and justness of the charges and rates of such commissioners be prima fade evidence that rates therein fixed are reasonable and just.” And again, section 13 makes it the duty of the railroad commissioners “to see that the provisions of this act are enforced,” and any person having an interest may make complaint to such commissioners that the rates established by the carrier are unreasonable, or that any of the provisions of the act are being violated. There upon the commissioners are to investigate the facts, and, if found against the carrier, the commissioners shall order a correction of the abuse; and they may make an award of damages to the injured party. These orders may be enforced by the attorney general or proper county attorney, *720 through the courts, and in such trials the finding of the commissioners shall be prima facie evidence, etc. Section 16 provides in detail for the hearing of complaints about unreasonable rates established or practiced by the carrier; and, if the commissioners are of the opinion that the rates should be changed or modified, they shall fix “and determine what would be reasonable and just charges or rates,” and deliver a copy of its finding to both complainant and carrier. “The rates of charges so found and ascertained by said prder, * * * certified,” etc., “shall, in any and all proceedings wherein is involved the reasonableness and justness of the rates and charges by such common carrier, be prima facie evidence that the same are reasonable and just.” Further provisions are made for application to the court for mandatory injunctions to compel the due performance of the duties imposed by the act upon such common carriers, and "to enforce obedience to the orders of the railroad commissioners.
Throughout the entire act it is clear that it was the legislative mind to impose upon the chosen agents of the state—the railroad commissioners—the duty of supervising and regulating the rates charged by such carriers, and to ascertain and declare, from time to time, as the changing conditions of trade and commerce might suggest, what, as between shipper and carrier, is a reasonable and just rate of compensation. In the absence of any affirmative action by the commissioners, the legislature declares a maximum rate, and the carrier is to make and keep public a schedule within this maximum. The railroad commissioners may revise it, if deemed right and just to do so; and the rates thus fixed are to be observed by the carrier until changed conformably to the statute. The statute expressly declares it to be unlawful for the carrier to exact a greater or less rate than that so scheduled. In the absence of any affirmative action by the commissioners, the. intendment of law arising from the legal presumption that public officers perform their duties should be that no complaint had arisen of unjust charges, or that the commissioners, who are presumed to be in possession of the schedule adopted by the carrier, deemed the maximum fixed by the carrier and the legislature to be reasonable and just.
Does it stand to reason that, after the legislature had provided all these agencies and instrumentalities for regulating the freight rates, and ascertaining and determining, pro bono publico, what is just and reasonable, and making that ascertainment prima fade evidence of its correctness in judicial controversies between shipper and carrier, it was contemplated that any shipper could thereafter be at liberty to disregard this lawfully established rate, and have its reasonableness and justness submitted to the arbitrament of a jury of the country? Can it be possible that, after the legislature has thus provided in detail a scheme for the establishment of reasonable rates, which shall be uniform to all the people, it intended by the general terms of sections 1, 10, and 11 to authorize any malcontent to go to a jury to fix for him another rate? What in the judgment of one jury in one locality would be an unreasonable charge might in the opinion of another jury in another locality be *721 quite reasonable. With the known caprieiousness of jury verdicts, influenced often by individual peculiarities, mental habits, the quantum and quality of the evidence in the particular case, how would it be possible to carry out the legislative intent to establish and maintain a uniform rate of charges? Would not the diversity of conclusions reached by different juries between different litigants in and of itself bring about discriminations and inequality? Under such a construction of this statute as contended for by plaintiff it is not apparent how any railroad company could safely do business in the state. Its agents could never know when they were safe in any charge by them made. After a schedule of rates has been approved and published, the statute makes it unlawful for the carrier to charge less than the scheduled rate, under the pains and penalties prescribed in the act; and yet, under plaintiffs theory, the common carrier might be liable for the penalty of triple damages because it did not charge a lesser rate.
Notwithstanding the phraseology of this statute may be, in some respects, inapt or ambiguous, yet it is the duty of the court to so construe the whole statute as to avoid, if possible, conflicts between different parts, and, by keeping in view the intention and design of the lawmaking power, to escape absurdities, and reconcile contradictions more apparent than real. It is the common carrier against which this legislation is directed. It is its acts, its delinquencies, which are sought to be guarded against and corrected. As against it, in any judicial controversy between it and the shipper, or between it and the state, respecting its freight charges, the schedule of rates limited by the state or declared by the commissioners shall, in favor of the shipper or the public, be taken as prima facie just and accurate; and the railroad company must assume the laboring oar to overcome this presumption. The statute simply reserves the right to the carrier to go to the courts under this disadvantage to have the findings of the commissioners reviewed. To the shipper the act gives every reasonable privilege and advantage. He can go to the board of commissioners with his complaint, and, without cost to himself, have an investigation by them of his grievances, with the means of enforcing the conclusions of the commissioners; or he may go, as has this plaintiff, directly to the courts, and have a trial “in due and ancient form,” and show, if he can, that the rate charged him is in excess of the limit fixed by the statute and the commissioners. When he does this, he stands in court with a prima facie case of unreasonable exaction made by the carrier.
Statutes of this character are not peculiar to this state. Similar legislation is to be found in other states, such as Nebraska, Iowa, Illinois, Georgia, and perhaps others. While these statutes may differ somewhat in phraseology and detail, the general trend, scheme, and policy are the same. The courts of those states, in construing their statutes in the particular under discussion, hold that the carrier may charge the maximum rate fixed by the statute, and a liability to the penal action never arises until the carrier passes in his charges this dead line. This for the reason, which stands upon a granite foundation of public justice and *722 common sense, that no act of the citizen can be unlawful which the law permits. A statute which would attempt to declare a different rule would not only be a legal solecism, but would commit an act of felo de se. See Railroad Co. v. Dey, (Iowa,) 48 N. W. Rep. 98; Railway Co. v. Dey, 35 Fed. Rep. 873-876; State v. Fremont, etc., R. Co., (Neb.) 35 N. W. Rep. 118, and 36 N. W. Rep. 305; Sorrell v. Railroad Co., 75 Ga. 509; Chicago, B. & Q. R. Co. v. People, 77 Ill. 443.
A right of action in favor of the shipper, it maybe conceded, existed at common law for extortionate charges, but the statute has superseded the common-law remedy. Young v. Railroad Co., infra; Ror. R. R. 1373, and notes. The plaintiff having no ground of action for an unreasonable and unjust charge against the carrier, except where the carrier has transcended the limit prescribed by the state’s agents, the petition should allege the facts necessary to bring the case within the operation of the statute. Kennayde v. Railroad Co., 45 Mo. 258; King v. Dickenson, 1 Saund. 135; Bayard v. Smith, 17 Wend. 88. This is not done, and the demurrer is sustained.
It appears on the face of the petition that as to the first 45 counts the causes of action arose more than three years next before the institution of the suit. Under the statute these causes of action are barred. This may be taken advantage of by demurrer. Henoch v. Chaney, 61 Mo. 129; Bliss v. Prichard, 67 Mo. 181; section 3231, Rev. St. Mo. 1879; Young v. Railroad Co., 33 Mo. App. 509.