## C. W. WHITE v. F. A. DELANO et al., Receivers of WABASH RAILROAD COMPANY, Appellants.

### In Banc, February 13, 1917.

1. **PENALTY PENDENTE LITE:** Violation of Freight Law. The penalty of treble-damages imposed by the Maximum Freight Rate acts of 1905 for an overcharge by a railroad company for the carriage of commodities was suspended during the pendency of the injunction suit brought by the carrier to enjoin the enforcement of the acts on the ground that the maximum rates fixed by them were confiscatory.

2. ———: ———: Constitutional Right. The constitutional right of any person whose property or liberty is affected by a statute to bring a suit to test its validity would be impaired and invaded if the penalties imposed by the statute for its violation could be inflicted upon him for violations of the statute during the pendency of a suit brought in good faith.

3. ———: ———: Right to Sue: Due Process. The right to sue and defend in the courts is one of the highest and most essential privileges of citizenship, and a statute which imposes on a citizen penalties for bringing a suit to establish his constitutional rights, or that imposes a penalty for its violation during suit pending, would deny to him due process of law, for it would impair his constitutional right to "certain remedy for every injury to person, property. or character."

4. **SUSPENSION OF STATUTE PENDENTE LITE:** Overcharge of Freight Rates. The Maximum Freight-Rate statutes of 1905, held to be invalid by the circuit court, but to be valid upon appeal to the Supreme Court of the United States, were not, as to the freight rates fixed by them nor as to overcharges, suspended during the pendency of the appeal.

5. **DAMNUM ABSQUE INJURIA:** Overcharges for Freight Shipment: Result of Suit. Overcharges for shipments of freight, made by a railroad company in violation of a statute during the time a

suit of injunction to test the validity of the statute was pending, wherein the circuit court held the statute invalid and the Supreme Court on appeal held it to be valid, are not *damnum absque injuria*, as flowing directly from the legitimate prosecrtion of the injunction; but such overcharges paid by the shippers belong to them, and may be recovered by them from the carrier.

6.  .OVERCHARGES: Charges Paid Connecting Carrier. Where the consignees of a freight shipment were not located on defendant's railroad, and a connecting company transported the cars to the consignees, for a consideration charged to and paid by defendant, and by the defendant charged to and paid by the shipper, the defendant has no legal right to surcharge the shipper's account with such connecting charges, but when sued for the overcharges should be required to respond in damages for whatever overcharges it made and collected in excess of the rates fixed by the statutes.

Appeal from Montgomery Circuit Court.—*Hon. James D. Barnett,* Judge.

REVERSED AND REMANDED *(with directions).*

*J.. L. Minnis, N. S. Brown* and *H. W. Johnson* for appellants.

(1) The demurrer to the evidence should have been sustained, because, (a) The Maximum Freight Rate Act was suspended for the time being, by force of the injunctive decree of the Federal court. State ex inf. v. Railroad, 176 Mo. 687; Young v. Railroad, 33 Mo. 509; Coal Co. v. Railroad, 52 Fed. 716; State v. Railroad, 130 Minn. 144; Wadley Southern Ry. v. Georgia, 235 U. S. 651; Coal & Coke Ry. v. Conley, 67 W. Va. 129, 230 U. S. 522.    (b) The alleged damages resulting to plaintiff are *damnum absque injuria,* because they directly flow from the legitimate prosecution of the injunction suit.    Meysenberg v. Schleiper, 48 Mo. 426; St. Louis v. Gaslight Co., 82 Mo. 349; State ex rel. v. Williamson, 221 Mo. 264; Albers Com. Co. v. Spencer, 236 Mo. 628; San Jose Co. v. Cutting, 133 Cal. 237; Clay Center v. Williamson, 79 Kan. 485; Russell v. Farley, 105 U. S. 445; Meyers v. Block, 120 U. S. 208; Tullock v. Mulvane, 184 U. S. 497; Railroad v. Elliott, 184 U. S. 530; Houghton v. Cortelyou, 208 U. S. 149; High on Inj. (4 Ed.), sec. 1663. (2) The court erred in

giving judgment to plaintiff for treble damages, because, (a) During the time the shipments were made, defendants were in good faith proceeding to test the constitutionality of the Maximum Freight Rate Act, and during such time the penalties provided by said statute could not be constitutionally invoked. Cases under point one, first subdivision. (b) The Maximum Freight Rate Act provided the exclusive penalty for its violation, and the penalty of treble damages provided for by section 3241 cannot be invoked. See Sec. 2, Laws 1907, p. 171. (c) Sec. 3248, R. S. 1909 was repealed by said section 2. See sec. 5, Laws 1907, p. 171. (3) The court's finding of fact on each count of the petition is contrary to the law and the evidence, and the judgment based thereon is excessive, because the court erroneously failed to allow each of the two carriers hauling the shipments, its maximum charges as provided by the Maximum Freight Rate Act. (4) The so-called continuous mileage provision of Sec. 3241, R. S. 1909, is invalid, because: (a) It is in conflict with the preceding parts of the section fixing the reasonable rates to be charged. (b) As applied to the facts in this case, the provision requires one of two things, viz.: (1) That the last carrier shall haul the shipment for nothing; or (2) that the first carrier shall, out of its revenues, pay the reasonable charges of the last carrier, and thereby reduce the revenues of the first carrier below the reasonable rates fixed by the statute. Owens v. Railroad, 83 Mo. 454. (c) The provision fixes no basis for dividing the total charges between the carriers involved in the haul, and is so indefinite and uncertain as to be incapable of enforcement, and therefore, void for uncertainty.

*Ernest E. Watson, W. P. Alden, Henry L. McCune* and *Clifford B. Allen, Amici Curiae.*

*James F. Ball* and *Claude R. Ball* for respondent.

(1) The suspension of the enforcement of the statute could only suspend the enforcement of the law between the parties to that case until the injunction was finally determined, and when the injunction was dissolved

it left the parties just where they were when the suit was begun. (2) If the railroad insisted on retaining the excess so charged, as they do here, the penalty of the statute should be invoked. (3) The statute complained of by the defendants in this cause has been upheld by the appellate courts of this State for a great many years. Burkholder Case, 82 Mo. 572; McGrew v. Railroad, 230 Mo. 496; McGrew v. Railroad, 177 Mo. 533; Cohn v. Railroad, 181 Mo. 30. (4) The overcharge of rate paid by the plaintiff in this case to the defendants was his as much after the payment of the same to the defendants as it was before. (5) The fact that plaintiff did not institute this suit against the defendants during the time the injunction suit was pending is in no way to the disadvantage of these defendants. (6) Such a statute as this enacted under the Constitution for the control of common carriers, or those operating such a system, should be construed in the most beneficial way which its language will permit, so as to prevent common carriers, and those operating the same, from infringing upon the rights of the citizen. McGrew v. Mo. Pac. Ry. Co., 177 Mo. 545; Gott v. Powell, 41 Mo. 417; St. Louis v. Gaslight Co., 70 Mo. 69, 82 Mo. 349. These cases all hold that parties must be restored to their rights at the time of the institution of the injunction. (7) The court's finding of fact on each count of the petition gave credit to the defendants for the legal rate they were entitled to charge the plaintiff for these various shipments from the point of beginning to their destination in the city of St. Louis. The court gave the defendants credit on each shipment for the amount they paid on each shipment to its connecting line, and rendered a judgment against them for the excess in each count.

*W. F. Evans, E. T. Miller, J. M. Bryson, J. W. Jamison, Edw. J. White, J. F. Green, Thos. T. Railey* and *Thomas R. Morrow, Amici Curiae.*

WOODSON, J.—This suit was instituted in the circuit court of Montgomery County by the plaintiff against the defendants as receivers of the Wabash Railroad Com-

pany, to recover alleged overcharges in payment of freight collected by them on shipments of live stock, made by plaintiff from Montgomery City, Jonesburg, New Florence and High Hill, Missouri, to the city of St. Louis, Missouri, and consigned to the St. Louis Stock Yards, the St. Louis Dressed Beef Company and the Independent Packing Company. There was a judgment for the plaintiff, and the defendants appealed to this court.

The issues and facts of the case are undisputed, and are as follows, as stated by counsel for defendants:

"The petition is based upon the Maximum Freight Statute of 1907 (Secs. 3241-2, R. S. 1909), and contains one hundred and thirty-nine separate counts, each count covering a separate shipment between the points named. As the allegations in each count are identical, except as to the place of shipment, the freight charges paid, and the amount of the alleged overcharge, it is deemed sufficient to refer to the allegations of the first count.

"The petition charges that 'the defendants are the duly appointed receivers of the Wabash Railroad Company, and were during all of the times mentioned in the petition, operating the line of the Wabash Railroad as a common carrier of live stock in carload lots, for hire, and for carrying of all other stock usually and customarily carried and transported by railroad companies of like nature. That during all of the times mentioned, the plaintiff was engaged in the business of shipping hogs, cattle, sheep and other live stock in carload lots from Montgomery City, Jonesburg, New Florence and High Hill to St. Louis, Missouri.

" 'And for his cause of action against defendants, states that on the 3rd day of January, 1912, plaintiff shipped two carloads of hogs from Montgomery City, Missouri, to St. Louis, Missouri, over said Wabash Railroad Company, owned and operated as aforesaid by the defendants, to the Independent Packing Company. That the distance between Montgomery City, Missouri, and St. Louis, Missouri, is over 75 miles and under 100 miles, towit, 85 miles; that the rate of charges prescribed by law upon the carload of hogs so shipped as aforesaid is and

was $15.40 per car, amounting to $15.40; but instead thereof, the defendants charged and plaintiff paid the sum of $21.75, being in excess of the legal rates aforesaid in the sum of $6.35, for which amount plaintiff asks judgment, and he asks that the same be trebled according to the provisions of section 3248 of the Revised Statutes of this State, and for all other due and proper relief.'

"The answer of defendants consists: (1) of a general denial; and (2) a special plea setting up the various proceedings had in a certain injunction suit instituted by the Wabash Railroad Company in the United States Circuit Court at Kansas City, Missouri, in the month of June, 1905, and the filing of its supplemental bill in June, 1907, to enjoin the enforcement of the rates fixed by the acts of the General Assembly of Missouri, approved April 15, 1905, and the act approved March 19, 1907, commonly known as the 'Maximum Freight Rate Acts.' The defendants in said suit were the then members of the Railroad and Warehouse Commission of Missouri, the Attorney-General, and certain individuals continually engaged in shipping over the line of the Wabash Railroad Company. Said individuals being sued as representing all of the shippers of the State as a class affected by the Maximum Freight Rate acts. With respect to this proceeding, the answer alleges the following facts:

"(1)   That upon the filing of said bill of complaint, there was entered by said court an order restraining the Railroad Commissioners from taking any steps to put in force and effect the maximum rates mentioned in the said statutes; and from requiring the Wabash Railroad Company to post or file at any time or place said maximum rates or a schedule thereof, from taking, making out, printing or delivering any schedule of rates containing said maximum rates, from instituting any investigation of any complaint that the rate was unreasonable, extortionate or unjust, because higher than the maximum rate fixed by said statute, from directing the Attorney-General of the State or any prosecuting attorney in each and all of the counties in said State to prosecute or assist in prosecuting complainant, directly or indirectly, for any failure

to file a schedule adopting said maximum rates or for
any failure to adopt or comply with the provisions of said
statute. That all the defendants, as well as all shippers,
affected by the proceeding be restrained from instituting
any action or taking any steps to collect any penalties
for the alleged violations of the provisions of said maxi-
mum freight rate acts.

"(2) That said restraining order also provided for
the filing of an injunction bond in the sum of ten thousand
dollars, conditioned to pay in case of the injunction being
dissolved, all damages ascertained in said cause in the said
court of the United States, to have been sustained by the
defendants or any of them, or by any person becoming
a defendant therein. That the Wabash Railroad Com-
pany, pursuant to such order, duly filed its bond in the
amount and conditioned as required by said order.

"(3) That said cause proceeded to trial and final
decree, which decree was entered on or about April 17,
1909, adjudicating and decreeing as follows:

"(a) The maximum freight rate laws of Missouri of
1905 and 1907, and the passenger rate law of 1907, to be
confiscatory, and that none of the provisions thereof
should, or could, be rightfully enforced against the com-
plainant, its officers, agents or employees; (b) the Attor-
ney-General and the Railroad Commissioners, their
agents, employees and successors were enjoined from en-
forcing or attempting, directly or indirectly, by suit or in
any other manner whatsoever, to enforce any of the pro-
visions of or the penalties provided for in any of said
rate acts; (c) the bills, to the extent only as they sought to
present injunctive relief against the individual defend-
ants sued as representatives of the class of shippers or
passengers, should be and were dismissed without prej-
udice, provided, however, that if, at any future time, any
of them should take, or threaten or attempt to take any
action under said statutes, the court reserved the power
to make such other order as justice required, and to bring
into the case, any person not expressly made subject to
the decrees, who might attempt or threaten to take any ac-
tion or institute any proceedings against complainant

under either of said statutes; (d) no appeal should supersede the injunctive portions of the decree, but, pending any such appeal, complainant should be permitted to charge the rates previously permitted by law, the same as if the passenger rate act of 1907 had not been passed, and (e) that complainant, having been, by order herein of June 17, 1907, at the request of defendants, required to temporarily adopt, as a test, the rate fixed by the passenger law of that year, should be and was permitted, free from the interference of the parties to the suit and classes represented by them who were ordered not to interfere, to restore and put in force the rates so authorized by previous laws, subject to the reserved power and jurisdiction of the court from time to time to enforce, change or modify such requirement, as well as to protect complainant in being restored to the right of which said temporary order deprived it.

"(4) That the defendant state officers appealed from the said decree to the Supreme Court of the United States. That the individual defendants refused to join in said appeal, and as to them there was a severance, and no appeal was taken by them.

"(5)   That on or about June 16, 1913, the Supreme Court of the United States  reversed the decree which had been entered in the circuit court at Kansas City, and directed the bill of complaint of the Wabash Railroad Company to be dismissed without prejudice.

"(6)   That on or about July 9, 1913, the mandate of the Supreme Court of the United States was filed with the clerk of the district court of the United States at Kansas City.   That thereafter the present Attorney-General of the State, and the then members of the Public Service Commission, were substituted as defendants in said cause, for their predecessors in office; that said defendants then asked that the mandate of the Supreme Court be entered, and that a decree be entered dismissing the said cause without prejudice, which was accordingly done.

"At the trial, counsel for the plaintiff admitted the facts pleaded with respect to the proceedings in the Federal Court.

"The case proceeded to trial before the court (jury being waived). At the close of all the evidence the defendants interposed their demurrer to the evidence, which was by the court overruled, and the court took the case under advisement. And thereafter, on October 20, 1915, the court rendered judgment in favor of the plaintiff and against the defendants on each count of the petition, in the aggregate sum of $890.91; and further found that defendants were liable to plaintiff as a penalty in the sum of $2672.73, and entered judgment accordingly.

"The materal facts with respect to the shipments set forth in the various counts of the petition were covered by a stipulation between the parties, which stipulation shows the date of the shipment, the number of the car in which the shipment was made, the length of the car in feet, and the amount of freight charged and collected.

"The testimony further showed that plaintiff consigned the various shipments either to the Independent Stock Yards, the Independent Packing Company, or the St. Louis Dressed Beef Company, all located within the city limits of the city of St. Louis. That the Wabash Railroad was unable to make deliveries to these consignees, because its line of railroad did not extend to their industrial plants. Deliveries were made in the following manner: The Wabash hauled the shipments to its point of interchange, in the city of St. Louis, with the St. Louis Terminal Railroad Association, and there delivered the cars to the Terminal. The Terminal hauled the cars from the point of interchange to the industrial plants of the consignees, and effected the delivery; so that, as to each of the shipments, two carriers were involved in the transportation from point of shipment to point of destination.

"The testimony further showed that all of the shipments were made during the months from January, 1912, to June, 1913, both inclusive; that during said time the defendants charged and collected freight upon said shipments computed according to their tariff then in effect, which fixed the rates at a certain number of cents per hundred pounds, instead of a per car basis as fixed by the Maximum Freight Rate statute.

"The evidence further showed that under said tar-
iff of rates, the Wabash Railroad did itself pay the Ter-
minal Railroad Association for the service of that com-
pany, in hauling the cars from the point of connection of
its line with the Wabash to the final destination of the
shipments. In the language of the freight men, the Wa-
bash 'absorbed' the Terminal charges out of its freight
rate. The charge made by the Terminal Railroad to the
Wabash for its service was three dollars per car on all
shipments consigned to the Independent Packing Company
and the St. Louis Dressed Beef Company, and $1.50 per
car on all shipments consigned to the Independent Stock
Yards. The haul of the Terminal on shipments consigned
to the Independent Packing Company and St. Louis Dress-
ed Beef Company was about one mile, and the haul on
shipments consigned to the Independent Stock Yards was
about the same distance.

"It was conceded by the plaintiff that the defendants
had the right to charge against the plaintiff whatever
charges it was required to pay to the Terminal Company,
to effect the deliveries; whereas, the defendants contend-
ed that if plaintiff was entitled to ship his stock at the
rates prescribed by the Maximum Freight Rate Act of
1907, then the defendants were entitled to charge the full
statutory scale of rates for the actual distance which they
hauled the shipment over their line, and likewise, the
Terminal Company was entitled to charge the full statu-
tory scale of rates for the distance it hauled the shipments
over its line.

"The defendants requested the court to declare the
law that, under the facts disclosed by the testimony, the
plaintiff is not entitled to recover treble damages on either
count of the petition, but the court refused to so declare
the law, and defendants contend that such refusal is vio-
lative of the constitutional rights of the defendants under
sections 10 and 30 of article 2 of the Constitution of this
State, and contrary to the Fourteenth Amendment to the
Constitution of the United States.

"These various legal propositions were preserved in
defendants' motion for a new trial and in arrest of judg-

ment, both of which the court overruled, and defendants thereupon perfected their appeal to this court, on the ground that the decision in the case involved the construction of the said provisions of the Constitution."

Defendants rely on the following errors for a reversal of the judgment:

"1. The trial court erred in overruling defendants' demurrer to the evidence at the close of all the testimony.

"2. The trial court erred in giving judgment to plaintiff for treble damages.

"3. The trial court erred in giving plaintiff's declarations of law numbered one, two and three.

"4. The trial court erred in refusing to declare the law to be as requested in defendants' declarations of law numbered one, two, three and four.

"5. The judgment is erroneous because excessive, and contrary to the law and the evidence."

I. While this suit is between plaintiff White and the receivers of the Wabash Railroad Company, yet eminent counsel for numerous other roads which have cases pending in the various courts of this State, involving similar questions to those here presented, asked and

Suspension of Statute During Injunction.

and were granted permission to file herein briefs *amicus curiae;* and while we have read and carefully considered all of them, yet we are not permitted to dispose of some of the questions therein discussed, because they are not involved in this case, and there are others discussed which are substantially the same as those presented and discussed by counsel in this case; consequently it would be a supererogation of labor to expressly notice and consider all of them separately in this opinion. However, we will try to write the law as we understand it to be, as gathered from all of the briefs in the case, which show great learning and much industry in the presentation of the propositions involved.

Counsel for defendants ask that the judgment of the circuit court be reversed for numerous reasons assigned; the first of which is: that the Maximum Freight Rate Act

of 1907, of this State, was suspended during the pendency of the injunction suit, mentioned in the answer, in the courts of the United States, and therefore the alleged damages suffered by the plaintiff are *damnum absque injuria*, because they directly flowed from the legitimate prosecution of the injunction suit.

For the purpose of clarity, this position of counsel should be considered and disposed of under three separate heads, namely: first, the intention of the Legislature regarding the penalty prescribed by said act for its violation during the pendency of the injunction suit mentioned in the answer, pending in the circuit court of the United States for the Western District of Missouri; second, the alleged suspension of the Maximum Freight Rate Act, regarding plaintiff's right to recover the excessive freight charges paid by him to the defendants; and, third, are the actual damages, the overcharges paid by plaintiff, *damnum absque injuria?*

We will dispose of these three propositions in the order stated.

Penalty
Pendente
Lite.

Attending the first: Was said penalty clause of said Act suspended during the pendency of said injunction suit in said United States Circuit Court?

In support of the affirmative of this interrogatory, counsel have cited us to the following cases: State ex inf. v. Railroad, 176 Mo. 687; Young v. Railroad, 33 Mo. 509; Winsor Coal Co. v. Railroad, 52 Fed. 716; State v. Railroad, 130 Minn. 144; Wadley Southern Ry. v. Georgia, 235 U. S. 651; Coal & Coke Ry. Co. v. Conley, 67 W. Va. 129, affirmed 230 U. S. 1. c. 522.

The first case cited has no application to the case at bar. That was a proceeding by *quo warranto* brought by the Attorney-General against the Atchison, Topeka & Sante Fe Ry. Co., to forfeit its charter for an alleged violation of the law, in charging shippers of grain to Kansas City, a "reconsignment charge," that is, a charge made by the defendant for transferring cars of grain from its tracks to the tracks of other companies. Upon that state of facts the court held, and properly so, that said charges

were not included in the statutes regulating freight rates, and that since the service was actually performed by the defendant, and the charges were reasonable, there was no violation of the statute or the common law of the State, and for that reason, among others, found the defendant not guilty.

The second case cited is an erroneous citation.

In the case of Winsor Coal Co. v. C. & A. R. R. Co., 52 Fed. 716, it was held by Judge PHILIPS, District Judge, that the Triple-Damage Statute of 1887 did not apply where the carrier did not charge a rate in excess of the maximum rate established by the Railroad Commissioners, or the maximum rate permitted by the statute in the absence of any action thereon by the commissioners. That ruling, in my opinion, was correct, but clearly it has no application to this case.

The case of State v. Chicago, M. & St. P. Ry. Co., 130 Minn. 144, was a criminal prosecution founded upon an indictment for the violation of the Minnesota statute fixing passenger rates, and prescribing a penalty for its violation. Prior to the institution of that prosecution an injuncton suit, similar to the one mentioned in the answer in the case at bar, was brought in the circuit court of the United States for theDistrict of Minnesota enjoining the enforcement of the Passenger-Rate statute. Under that state of facts the Minnesota court held that defendant could not be convicted of a felony for violating the statute during the pendency of the injunction. That case, in my opinion, was properly decided, and clearly supports the proposition under consideration. To have held otherwise would have been a stroke at the very warp and woof of constitutional form of government, and if that clause of the statute had been sustained, the very rock-ribbed foundation of republican form of government would have been demolished. It not only violates the State and Federal constitutions, but, if valid, practically abolishes them. This is apparent to every one, for if such a penal statute should be upheld under the circumstances, then the penalty could be increased to such a degree that no one would dare challenge its constitutionality. In other words, if

White v. Delano.

the penalty of such a statute should be held operative during the pendency of the injunction suit, then but few, perhaps, would be bold enough to test its validity, especially in doubtful case; but fortunately for the citizens of this country, both the State and the Federal constitutions provide that "courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character," etc. [Sec. 10, art. 2, Constitution of Missouri, 1875.]

Section 2 of Article 4 of the Constitution of the United States, and section 1 of the Fourteenth Amendment thereof, extend the rights guaranteed by the Missouri constitutional provision mentioned, to all citizens of the United States. [Chambers v. Railway, 207 U. S. 142-148; International Textbook Co. v. Pigg, 217 U. S. 91.]

The same ruling has been announced by this court in the cases of International Textbook Co. v. Gillespie, 229 Mo. 397; British-American Portland Cement Co. v. Citizens Gas Co., 255 Mo. 1; Gold Issue Mining & Milling Co. v. Pennsylvania Fire Ins. Co., 267 Mo. 524.

The Supreme Court of the United States in the case of International Textbook Co. v. Pigg, supra, held that a statute of Kansas denying the right of a foreign corporation to sue in the courts of that State without first taking out a license to do business therein, was unconstitutional, null and void, and in so doing, used this language: " 'The right to sue and defend in the courts is the alternative of force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the *highest and the most essential privileges of citizenship, and must be allowed by each State to the citizens of all other States to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the States, but is granted and protected by the Federal Constitution.*' "

In the discussion of similar statutes this court in the cases cited, followed the rule just announced; and that being the law, it brushes aside all statutes making it necessary for citizens of this State and of the United States to

first procure a license in order to exercise their constitutional right to sue and be heard in the courts of the country; then how much stronger is the reason for holding a statute unconstitutional which makes it a felony for a person to challenge the constitutionality of a statute, which it is claimed, if enforced, would confiscate the property of the contestant or take it without due process of law, as was claimed in the injunction suit mentioned, also in the Minnesota injunction suit? To deter a person from asserting his constitutional rights in a court of justice by prescribing excessive penalties, physical force or mental restraint, is for all practical purposes a denial to him of due process of law; he can only have the benefit of the due process-clause of the Constitution, by going into court, being given a hearing and having judgment pronounced according to the law of the sovereignty; and if for any good reason he is denied that right, then he has not had his day in court, within the meaning of the State and Federal constitutions. In other words, the courts of this country will no more permit a partial closing of the doors of courts of justice to litigants, than they will tolerate a complete closing—the fundamental law of the land established the courts, and by providing that they should be opened to all, means that they have no doors to close in the face of a bona-fide litigant; consequently any statute which denies or trammels the right of a person to freely present his lawful rights to a court of justice for determination, must yield to the superior mandate of the Constitution.

A case perhaps more in point than those cited, is that of State ex rel. v. Johnston, 234 Mo. 338, following the rule announced in the case of Herndon v. Chicago, Rock Island & Pacific Ry. Co., 218 U. S. 135. In that case the Northern Arkansas Railway Company, a foreign corporation, duly licensed to do business in this State, was sued by a citizen of Missouri, in the circuit court of Newton County. In proper time and in due form, the company filed a petition in that court to remove the cause to the circuit court of the United States for the Western District of Missouri, on the ground of diversity of citizenship. Thereupon proceedings were instituted under the Act of

White v. Delano.

March 13, 1907, to forfeit the license of said company to do business in this State, which in effect provided that if any foreign corporation licensed to do business in this State should apply for a removal of a suit brought in any court of this State against it, etc., by a citizen of Missouri, it should thereby forfeit its right to do business herein. Thereupon the State, at the relation of said railroad company, applied to this court for a writ of prohibition to prohibit the circuit court of Newton County and the Secretary of State from proceeding further in the proceedings brought to forfeit the license of said company. A temporary writ was issued, and upon the return coming in, the cause was heard upon its merits, and following the cases of Western Union Tel. Co. v. Kansas, 216 U. S. 1; Pullman Co. v. Kansas, 216 U. S. 56; Ludwig v. Western Union Tel. Co., 216 U. S. 146; Southern Railway. Co. v. Greene, 216 U. S. 400, and Herndon v. Chicago, Rock Island & Pacific Ry. Co., supra, held said Act of March 13, 1907, unconstitutional, null and void. The real ground of that decision was that the Legislature of this State had no power, directly or indirectly, to prohibit the railroad company from exercising its right, under the Constitution of the United States, to remove said cause from the circuit court of Newton County to the circuit court of the United States.

If, therefore, the company had the constitutional right to remove said cause to the United States court, as all of said cases hold, then that right could not be abridged or prohibited by a statute of this State by imposing a penalty upon it for attempting a removal.

The case of Wadley Southern Ry. Co. v. Georgia, 235 U. S. 651, was a case where a statute of the State of Georgia empowered the Railroad Commission, after a hearing, to make an order prohibiting railroad companies from demanding freight payment in advance on merchandise received from one carrier, while it accepts merchandise of the same character at the same point from another carrier without such payment. In that case the court held that the order was not so arbitrary and unreasonable as to be violative of the due process clause of the Fourteenth

Amendment. It also held that a State has power to impose penalties sufficiently heavy to secure obedience to orders of public utility commissions after they have been found lawful or after the parties affected have had ample opportunity to test the validity of administrative orders and fail so to do; and that a party affected by a statute passed without his having an opportunity to be heard is entitled to a safe and adequate judicial review of the legality thereof. It is a denial of due process of law if such review can be effected by appeal to the courts only at the risk of having to pay penalties so great that it is better to yield to orders of uncertain legality than to ask the protection of the law.

In the case of Railroad v. Conley, 67 W. Va. 129, the court in discussing a similar rate statute held it invalid, as indicated by the 21, 22 and 23 paragraphs of the syllabus, which are as follows:

"21. *Constitutional Law—Due Process of Law— Railroad Rates.* Legislative reduction of such charges so as to prevent the earning of such remuneration, amounts to a taking of private property for public use, without compensation to the owner thereof, and a rate-regulating statute, so operating, is void, in so far as it has such effect, being in conflict with section 10 of article 3 of the Constitution of this State and the Fourteenth Amendment to the Constitution of United States, inhibiting deprivation of property without due process of law, and also with the equality clause of said amendment.

"22. *Corporations—Public Service Corporations— Rate Regulating Statute.* A public service corporation is entitled to a judicial inquiry as to whether, in point of fact, a rate-regulating statute is confiscatory, and, if the Legislature has failed to prescribe or designate a mode of determining such question, the party aggrieved may invoke any appropriate remedy therefor in law or equity.

"23. *Statutes—Partial Inability—Effect.* If penalties are prescribed in such a statute as a sanction for due enforcement thereof, and the persons and corporations affected thereby are not expressly or impliedly excepted from the operation of the penal clause, pending such

judicial inquiry, and the penalties are so heavy and severe as to expose such persons and corporations to great risk of loss in prosecuting such inquiry, the entire statute is void on its face in so far as it so interferes, unless the penal clause is separable from the rate prescribing clause, in which case the former only is void to the extent aforesaid.''

The latter case was taken to the Supreme Court of the United States, and was affirmed by that court. The opinion is reported in 230 U. S. 513.

By a careful reading it will be seen that all of the cases cited by counsel for defendants that are in point, fully support the contention that the penalty clause of such a statute is suspended during the pendency of a suit to test the constitutionality of the statute which the penalty is designed to enforce.

But upon principle it seems to me that where a person is in good faith challenging the validity of a statute, the penal clause thereof, whether severe or lenient, should be suspended pending the litigation brought for that purpose. In my opinion, it was never the intention of the Legislature to have the penalty enforced during the pendency of the suit; but concede that such was its design, then, in my opinion, such clause would nevertheless, under the constitutional provisions mentioned, be suspended during that period.

I am therefore of the opinion, based upon both principle and authority, that the penal section of the rate-statute was suspended during the pendency of the injunction suit testing the constitutionality of said act.

**Suspension of Statute Pendente Lite.** Regarding the second proposition previously mentioned, namely, was the rate act itself suspended during the pendency of the injunction suit testing the constitutionality of the act proper?

The cases heretofore cited and considered are relied upon by counsel for defendants in support of their insistence that it was suspended, and therefore they contend that there was no overcharge made against or collected

270 Mo.—3

from plaintiff in any of the shipments mentioned in the petition.

After a careful consideration of those cases we are clearly of the opinion that they are not authority for counsel's position. They were leveled at the penalty statute, and not at statutes fixing the rates of freight and passenger charges to be made and collected for the transportation of freight and passengers.

In fact, no good reason has been assigned, or authority cited, in support of that contention. The act having been held valid by the Supreme Court of the United States, in the injunction suit mentioned in the answer, that seems to be an end of that question. I know of but two ways to suspend or repeal a statute duly enacted, and the first is by an act of the Legislature expressed or implied in the same or in a subsequently enacted statute, and second, by the courts of the State, in declaring a statute invalid in the exercise of their judicial authority.

The statutes now under consideration have never been suspended or repealed by any act of the Legislature, nor declared by any court to have been inoperative for any length of time, except the circuit court of the United States for the Western District of Missouri, which held the entire act unconstitutional; but that ruling was overruled by the Supreme Court of the United States when the case reached there on a writ of error, thereby abrogating the judgment of the lower court *ab initio.*

We, therefore, hold that the act under consideration was not suspended during the pendency of the injunction mentioned, except as to the roads excepted by the judgment of the Supreme Court of the United States in said cause.

The third position mentioned by counsel for defendant is untenable; the contention being that "the damages (the overcharges made and collected from plaintiff) resulting to plaintiff are *damnum absque injuria,* because they directly flow from the legitimate prosecution of the injunction suit."

Damnum
Absque
Injuria.

In support of that contention we are cited to the following authorities: Meysenburg v. Schlieper, 48 Mo. 426; City of St. Louis v. Gaslight Co., 82 Mo. 349; State ex rel. v. Williams, 221 Mo. 227, 1. c. 264-5; Albers Comm. Co. v. Spencer, 236 Mo. 1. c. 628; Fruit Packing Co. v. Cutting, 133 Cal. 237; Clay Center v. Williamson, 79 Kan. 485; Russell v. Farley, 105 U. S. 1. c. 445; Meyers v. Block, 120 U. S. 206, 1. c. 208; Tullock v. Mulvane, 184 U. S. 497; Railroad v. Elliott, 184 U. S. 530; Houghton v. Meyer, 208 U. S. 149; High on Injunction (4 Ed.), sec. 1663.

We have read and carefully considered these cases and after due deliberation are of the opinion that none of them are in point.

The case of the City of St. Louis v. Gaslight Co., supra, is a fair sample of the rule announced in all of said cases. In that case the facts were these:

"The city of St. Louis instituted a suit in the circuit court, the object of which was to compel the St. Louis Gaslight Company to convey all its works to the plaintiff, to obtain an accounting of the rents and profits of the works and property subsequent to January 1, 1870, with decree of payment of the net balance thereof over expenses, and an order enjoining the company from any further prosecution of its business and for the appointment of a receiver to take charge of the works and carry on the business until the further order of the court. No temporary injunction was asked or granted, and for that reason no injunction bond or stipulation by the plaintiff to pay damages consequent upon a dissolution of the injunction appear in the case.

"After a final hearing of the case upon its merits, the remedy as prayed for by plaintiff was granted, and the property was taken from the control of the company, and all further prosecution of its business enjoined. Upon appeal to the St. Louis Court of Appeals, this decree was affirmed, from which action of said court the company appealed to the Supreme Court. In this court the judgments of the lower courts were reversed and the cause was remanded, with directions to the circuit court to enter

a rule requiring the receiver to restore to the company all the gasworks and property held by him in virtue of the decree, together with the profits derived therefrom, and to report his action thereon to the court; and upon approval of said report to dismiss the bill. [City of St. Louis v. St. Louis Gaslight Co., 70 Mo. 69.] After the mandate of this reversal was received by the circuit court, the defendant filed a motion with the view of having it carried out. In this motion the court was asked to ascertain and assess damages suffered by defendant by reason of the injunction before dismissing the bill. The damages claimed were stated in the bill of particulars as resulting from the reduction in the price of gas during the litigation, from reduction in the cost of lighting, extinguishing and cleaning public lamps, from expenditures incurred by the receiver and from attorney's fees, aggregating in all the sum of $549,475.23. Soon after the filing of this motion the court entered a final decree dissolving the injunction and dismissing the cause without taking any notice of that part of the motion which asked for an assessment of damages.''

The chief differentiation of that case from the case at bar is this: There, every cent the city collected, through its receivers, from the patrons of the Gaslight Company, during the time the injunction was in force, was properly accounted for to it, upon the dissolution of the injunction, and the city did not retain a penny of the company's money; whereas in the case at bar, the defendants, upon the dissolution of the injunction, issued by the circuit court of the United States, have not refunded to plaintiff any of the money it collected from him during the pendency of the injunction, which was in violation of the rate act mentioned. The other damages the Gaslight Company complained of were of the character that naturally flow from the institution and prosecution of any ordinary suit, which cannot be recovered except as may be expressly provided for by law, or in a suit for malicious prosecution, where it is shown the suit was not brought in good faith. Clearly that case has no application to the case at bar; nor are any of the others cited applicable.

The only case cited, or that we have been able to find, which is directly in point, is that of Love v. North American Company, 229 Fed. 103, decided by the United States Circuit Court of Appeals from the Eighth Circuit. In that case the Corporation Commission, under an Arkansas statute, fixed certain freight rates to be charged by railroads for the transportation of freight in that State; from the order fixing said rates the Frisco Railway Company appealed to the Supreme Court, and gave the *supersedeas* bond conditioned for the refunding of all charges collected above the rate so fixed, pending the appeal, if affirmed by the Supreme Court. For the purposes of this case the order of the commission was affirmed, and the railroad company collected freight charges in excess of the rates fixed by said order. In the meantime the road had gone into the hands of receivers appointed by the United States Circuit Court for the District of Arkansas. In due time, the shippers of freight over that road, during the pendency of said appeal, the period the excessive rates had been charged and collected, presented their claims to the receivers for allowance as preferred claims against the road. Without stopping to notice the ruling of the circuit court, the Court of Appeals, in ruling in favor of the shippers, used this language:

"The question now might be properly asked to whom do the excessive charges received by the Frisco Company for the transportation of freight belong? They certainly do not belong to the general creditors of the Frisco Company, nor to the bondholders, nor to the Frisco Company itself. Without question they belong to the shippers. We must not be deceived as to the true status of this claim, nor allow the bond, or the fact that the claim is presented by the corporation commission to blind us to the fact that the claim is one due to the shippers for excessive charges paid by them to the Frisco Company for transportation of freight. The shippers not only paid the lawful charge, but they did more—they paid an excessive charge. That payment was an illegal exaction, and as against the railroad company and volunteers like the receivers the money be-

longed to the shippers after the payment the same as before.''

, After a careful consideration of that case, we are satisfied with the reasoning and the conclusions reached by the court.

The rate statutes here under consideration are valid, as held by the Supreme Court of the United States, and therefore, the excessive charges collected from plaintiff were unlawfully collected. So the question naturally arises, as asked by said Circuit Court of Appeals, to whom do the excessive charges collected by the Wabash Company from the plaintiff for the transportation of his freight belong? They do not belong to the general creditors of the Wabash Company, nor to the bondholders nor to the Wabash Company, itself. Unquestionably they belong to the plaintiff in this case.

It must therefore follow that the judgment of the circuit court in so far as those collections are concerned, is correct, without it is reversed for some other reason assigned by counsel for defendants.

II.   Counsel for defendants finally insist that the judgment of the circuit court must be reversed for the following reason: ''The Court's finding of fact in each count of the petition is contrary to the law and the evidence, and the judgment based thereon is excessive, because the court erroneously failed to allow each of the two carriers (the defendant company and the Terminal Railway Compnay, to which defendant delivered the cars, of freight for transportation and delivery to the consignees) hauling the shipments, its maximum charges, as provided by the Maximum Freight Rate Act.

It should be remembered that the consignees of the live stock shipped by plaintiff were not located upon the line of the defendants' road, but about a mile and a half beyond its terminus, on the line of the St. Louis Terminal Railway Company, and that the latter company transported said stock to the various consignees, for a consideration charged to and paid by the defendant company, and by the latter charged to and collected from the plaintiff.

Under that state of facts this insistence of counsel is a moot question, for the reason that the Terminal Company never made nor collected of the defendants the charges now made for it by them. It charged three dollars per car for the services it performed for the plaintiff, and he has fully paid those charges, and the defendants have no legal right at this late day to surcharge plaintiff's account with the items now claimed by them.

This view of the case also relieves us of the duty of deciding whether or not under the facts of this case the continuous mileage provision of section 3241, Revised Statutes 1909, is in conflict with the preceding parts of the section fixing reasonable rates to be charged, as contended for by counsel for defendants.

For the reasons stated, the judgment is reversed and the cause remanded with directions to the circuit court, to enter judgment for the plaintiff for the actual excessive charges made and collected from plaintiff, less the sum the defendants paid the Terminal Company for delivering the cars to the consignees of the live stock shipped. All concur; *Bond, J.*, concurs in separate opinion.

BOND, J. (concurring)—I concur only in the result reached in the majority opinion. The reasons for my concurrence are that when the suit of the State against the Chicago & Alton Railroad was held, by a divided court, not to be maintainable (265 Mo. 646), the points were pressed in argument that no recovery could be had by any shipper for charges exceeding the maximum rate fixed by the statute for the carriage of freight, pending an injunction suit brought in the Federal court to restrain the enforcement of that statute, and that in any event the amount fixed in the injunction bond given in the Federal court was the limit of liability on the part of the carriers. I dissented to the conclusion reached in the majority opinion in that case and in the course of my dissenting opinion I discussed, *in extenso*, the law applicable to those two questions. [265 Mo. l. c. 705, paragraph III of my dissenting opinion.] What was said at the beginning of that paragraph and ending on page 709, expresses fully the legal

reasons why the State or any other shipper might recover the excessive rates charged by a carrier disobeying the statute during the pendency of a Federal injunction, and why such recovery could, neither in law nor logic, be limited to the amount of the bond given for the obtention of the injunction. It is unnecessary to republish what is there said. But for the reasons there given I concur in so much of the conclusion of the present majority opinion as affirms the right of the shipper to recover any overcharge exacted from him by a carrier during the temporary existence of the Federal injunction.