Richards, J.
The original action out of which this proceeding in error grows was brought in the court of common pleas by The Big 4 Coal Company to recover claimed excessive and unlawful rates and overpayments exacted of it in the shipment of coal from Nelsonville, Ohio, to Toledo, on *89 'the defendant’s line of railroad. The petition yvas met by a general demurrer, 'which the court, on consideration, sustained, and the plaintiff not desiring to plead further final judgment was rendered, dismissing the petition.
It appears from the allegations of the petition that the plaintiff is engaged in the business of buying and selling coal in Toledo, and that on June 27, 1911, the Railroad Commission of Ohio by an order effective July 27, 1911, reduced the freight upon coal shipped in carload lots from Nelsonville to Toledo, on defendant’s line, from $1.00 per ton to $.85 per ton, and fixed, and established $.85 per ton as a legal and reasonable rate on shipments between said points. It is further alleged that the defendant railroad company thereafter commenced proceedings in the court of common pleas of Franklin county, against the Public Service Commission, the successor of the Railroad Commission, for the purpose of securing the vacation and suspension. of said order so made by the commission, and that the court in which the action was pending stayed the order of the commission, upon the execution of a bond, but that on the final hearing of the case the court approved the order of the commission and dissolved the injunction. The case was carried, by proper proceedings, to the court of appeals, where a like decree was rendered, and thereupon the case. was carried to the supreme court of Ohio where the judgment of the court of appeals was affirmed.
The petition avers that during all the time that the order was stayed by said courts the defendant company continued to charge, and the plaintiff was *90 required to pay, and did pay, $1.00 per ton freight on all coal shipped to plaintiff over the defendant’s line. The petition avers that the decision of the supreme court, finally approving the finding and order of the commission fixing the rate at $.85 per ton, was rendered on the 2d day of July, 1915, and that the defendant company on the 27th day of that month filed its tariff effective July 28, 1915, making said rate from Nelsonville to Toledo $.85 per ton. It is averred that between July 27, 1911, and July 28, 1915, the plaintiff received at Toledo 1,180 carloads of commercial coal, shipped over the defendant’s line from Nelsonville, containing 49,908.7 tons, for all of which the plaintiff was illegally charged and required to pay, and did pay, at the rate of $1.00 per ton as freight, whereas the defendant company was entitled to charge and receive for such shipments $.85 per ton and no more.
It is insisted that the demurrer was properly sustained and the petition dismissed because the commencement of the action by The Hocking Valley Railway Company 'in the court of common pleas of Franklin county, to .vacate and set aside the order of the Railroad Commission, did, in fact and in law, vacate the order of said commission, and that therefore the only lawful, existing rate during tire time embraced in the petition was $1.00 per ton; and that, in any event, the plaintiff could only recover by an action upon the bond which was-given in the common pleas court of Franklin county and that if such recovery could be had in that manner the maximum amount of the recovery would be the penalty named in the bond.
*91 The court of common pleas adopted the view that the order of the Railroad Commission, establishing the $.85 rate, was vacated in the court of common pleas of Franklin county, and that the rate of $1.00 per ton was therefore the only legal rate, and for this reason sustained the demurrer and dismissed the petition.
A solution of the question depends upon a construction of Section 614-69, General Code, and Section 614-70, General Code, as amended in 102 Ohio Laws, 571. The action authorized by these sections 'is one to vacate and set aside an order of 'the commission. That is the ultimate relief sought by the plaintiff in such action, and the latter section cited authorizes the court to suspend the operation of the order, pending the litigation. One clause in the latter section provides that the commencement of such action to vacate and set aside the order “shall vacate and suspend the order of the commission” upon the giving of an undertaking in an amount to be determined by the court. The word “vacate” was not well chosen to express the evident legislative intent of the statute and as used in this section it can only be construed to mean the same as the word “suspend.” A reading of the entire act makes it clearly manifest that, the legislative purpose was to suspend the enforcement of the rates fixed by the commission until the termination of the litigation, and, if the result of the litigation should establish the reasonableness of the rates fixed by the commission, then the amounts collected above the rates so fixed would be excessive. The same section provides that the condition of the undertaking to be given by the *92 plaintiff in that litigation shall be that the railroad company shall refund to each of the users the amount collected by it in excess of the amount which shall finally be determined it is authorized to collect from such users. If the order of the Railroad Commission, fixing the $.85 rate, were to be .vacated by the commencement of the action, there would be little use for the execution of an undertaking, the condition of which was as above stated. We construe this statute as one which merely suspends temporarily, and during the pendency of the action, the enforcement of the order of the Railroad Commission. If, as a final result of the litigation, the rates as fixed by the commission are sustained by the court, then those rates have been, during the litigation, the only lawful rates, but their enforcement prevented by order of court during ¡the pendency of the action. In such event it would follow that an exaction above the $.85 rate per ton, fixed by the commission, would be unlawful, and as said in The Taylor-Williams Coal Co. v. Public Utilities Commission of Ohio, 97 Ohio St., 224:
. “The remedy of the shipper is by action in a court of competent jurisdiction against the company on its liability to refund 'the excess charged above the amount finally determined that it was authorized to collect.”
The case just cited involved ¡a ¡construction of the identical order made in the case now under consideration, and in that case the court, speaking through Johnson, J., refers frequently to the-order of the commission as being “suspended” during the pendency of ¡the litigation, and nowhere is it re *93 ferred to therein as “vacated.” It was held in that case that the charge made during the pendency of the litigation was not a proper subject for a complaint to the Public Utilities Commission for overcharge, but that the railroad company incurred a liability to refund and the remedy would be by an action at law to recover the amount.
This action is not brought on the bond given in the court of common pleas of Franklin county, but is one to recover the amounts claimed to have been unlawfully exacted. Counsel for defendant urge that no action will 'lie except one upon the bond given in that litigation. It is said, in argument, that the bond there given was for $25,000, and that the excessive amounts collected from various shippers, during that litigation, amount to $300,000. We are not persuaded that the only remedy allowed is an action upon the bond. The bond is given as a protection to the shipper and not as a limitation upon ¡his right to recover. Dong before the establishment of a Railroad Commission a remedy existed for overcharges made by common carriers, and it appears to this court that the remedy by action on the bond is only an additional or cumulative remedy. By staying the enforcement of the lawful rate fixed by the Railroad Commission, the plaintiff in that action incurred a liability to refund the 'amount collected by it in excess of the amount which it was authorized to collect. The bond which was there given was a mere incident of the liability to refund, a mere security for the repayment in so far as it might secure the same. In its final analysis the situation is not materially different •from a case where a landlord and tenant are in *94 controversy over the amount of monthly rental to be paid by the 'terms of their agreement, the landlord contending it is $100 per month and the tenant that it is $85 per month. Litigation arises to determine the rate agreed on, and while that litigation is pending the higher rate of $100 per month is necessarily paid. The litigation finally results in an adjudication that $85 per month was the lawful rent, but, in the meantime, the 'higher rate has been paid during the pendency of the litigation. We suppose there can be no doubt but that the tenant would be entitled to recover the excessive rent paid by him and that he may recover the amount so paid independent of any bond that may have been given to secure the same. City of New York v. Brown et al., 179 N. Y., 303.
Numerous cases have been determined by the courts, growing out of the collection by common carriers of amounts in excess of the rate fixed by various public commissions, and, while the statutes are, of course, not precisely the same, their general tenor is not dissimilar. The case of Fletcher Paper Co. v. Detroit & Mackinac Railroad Co., 198 Mich., 469, is a very instructive one on the issues in the case at bar. That case, under the title of Detroit & M. Ry. Co. v. Fletcher Paper Co., was affirmed on November 18, 1918, by the supreme court of the United States, 248 U. S., 30. It appears from that case that the rates fixed, by the commission were to become effective twenty days after service on the railroad company, while the Ohio statute, Section 535, General Code, provides that such an order shall, of its own force, take effect and become operative thirty days after serv *95 ice thereof. In the Michigan case, as in the case at bar, the operation of the rates was suspended by litigation, brought to set aside the order of the commission on the ground that those rates were unlawful and unreasonable. The supreme court of Michigan allowed a recovery for the sums illegally exacted, putting aside the question whether the statute provided a method of recovering such payments, and asserting that no reason appeared for denying to the plaintiffs the right to recover in an action of assumpsit all of the money illegally taken from them, and that it was immaterial whether they declared upon the statute or upon the common counts.
Other cases, construing analogous statutes and justifying a recovery for excessive charges, are the following: State, ex rel. Barker, v. Chicago & Alton Rd. Co., 265 Mo., 646; White v. Delano et al., Recrs., 270 Mo., 16, and Love et al. v. North American Co. et al., 229 Fed Rep., 103.
We are forced, on a consideration of the statutes and the decisions, to the conclusion that the petition states a good cause of action and that the demurrer thereto should 'have been overruled.
The statute was passed for the protection' of shippers and to prevent their being required to pay unjust charges. It provides for the temporary suspension of the enforcement of the rate fixed by the commission, pending the litigation, and does not justify 'holding that the mere commencement of an action vacates and nullifies the schedule of rates fixed by the commission. If the rates," as established by the commission, are litigated, and ultimately .sustained, and during the pendency of the *96 litigation the railroad company collects a higher rate than that established by the commission, such company is liable to refund the excess collected above the rate established by the commission. To adopt any other construction would enable the shipper to say, and say justly, of the law and the courts, that they “keep the word of promise to our ear and break it to our hope.”
Judgment will be reversed and the cause remanded with directions to overrule the demurrer to the petition and for further proceedings.

Judgment reversed, and cause remanded.

Chittenden and Kinkade, JJ., concur.