**MID–STATE DISTRIBUTING COMPA-NY, a corporation et al., Appellants,**

**The Coca-Cola Bottling Company of Mid-America, Inc., a corporation, Intervenor-Appellant,**

**v.**

**The CITY OF COLUMBIA, Missouri, a Municipal corporation, Respondent,**

**David P. Thelen and Charles Atkins, Intervenors-Respondents.**

**No. WD 31226.**

Missouri Court of Appeals, Western District.

March 30, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 4, 1981.

Application to Transfer Denied July 14, 1981.

Thomas D. Graham, Jefferson City, for appellants.

Thomas W. Wagstaff, Kansas City, for intervenor-appellant.

W. Scott Snyder, Thomas M. Schneider, Susan Crigler, Columbia, for respondent.

Darwin A. Hindman, Jr., Columbia, for intervenors-respondents.

Before KENNEDY, P. J., and SHANGLER and SOMERVILLE, JJ.

KENNEDY, Presiding Judge.

The issue in the present case is the validity of an ordinance of the City of Columbia which establishes a refund value of five cents each upon certain beverage containers sold in the City of Columbia, and requires the retailer to pay the same amount upon

receipt of the containers. Manufacturers and distributors in their turn must pay the refund value for the containers. The ordinance contemplates, but does not require, the collection of a five-cent deposit from the consumer upon each container, which is refunded upon return of the container. The declared purpose of the ordinance is to reduce littering and to promote recycling and reuse of empty beverage containers.

The ordinance was adopted by the initiative process, a procedure provided in Columbia's Home Rule Charter, on April 5, 1977.

The plaintiffs and intervenor plaintiffs are various bottlers, distributors and retailers of the beverages affected by the ordinance. After the enactment of the ordinance and before its July 4, 1977, effective date, the plaintiffs commenced the present suit for a declaratory judgment, attacking the validity of the ordinance. A temporary injunction against its enforcement was entered pending the conclusion of the declaratory judgment action in the trial court, and was continued pending the appeal now before us.

Upon trial to the Circuit Court of Boone County, the trial court found that the ordinance was valid and entered a judgment so declaring. From that judgment the plaintiffs and intervenor plaintiffs have taken this appeal. We conclude that the trial court was correct in its judgment and we affirm the same.

Various features and provisions of the ordinance will be more fully noticed in connection with our discussion of the various attacks made upon it by the appellants.

## I. ADOPTION OF ORDINANCE

We first take up appellants' final point, which challenges the validity of the ordinance because of what appellants say was a fatal defect in its adoption.

■ Under this point, they first say that the title of the ordinance does not comply with Article II, Sec. 15, of Columbia's Home Rule Charter. That section of the Charter provides that: "No bills shall relate to more than one subject, which shall be clearly expressed in its title". Without pausing to consider whether the ordinance was ever in "bill" status, so as to bring it within the above charter provision, we hold that the title of the ordinance was sufficient. The title reads: "An ordinance amending Chapter 10 by adding and enacting a new Article XIV relating to beverage containers; and fixing the time when this ordinance shall become effective". The title is thus indicative of the subject of the ordinance, and meets the standard of the above-quoted Sec. 15 of Article II of the Charter. *State ex rel. Jardon v. Industrial Development Authority of Jasper County*, 570 S.W.2d 666, 667 [10] (Mo.banc 1978).

Appellants' main attack under this point, though, is that the proposition printed upon the initiative election ballot was in violation of Article XVII, Section 134, of the Charter.[1] That provision of the Charter is as follows: "When a matter is submitted to the voters of the City by the Initiative or Referendum methods, the ballot title shall be a clear, concise statement, without argument or prejudice, descriptive of the substance of such ordinance".

The ballot contained the following proposition: "*PROPOSITION*—Shall an ordinance be adopted establishing a mandatory refund value of at least 5 cents on all beverage containers purchased within the City of Columbia..."

Appellants point out that the ordinance did not relate to *all* beverage containers, as stated on the ballot, but only to certain beverage containers, namely, those containing "beer or other malt beverages and mineral waters, soda water and carbonated soft drinks in liquid form and intended for human consumption", which are not biodegradable and which are sealed. Appellants point out that this leaves a variety of beverage containers outside the range of the ordinance, such as cans and bottles contain-

1. Respondents contend this point was not made in the lower court nor ruled upon there, and is therefore not properly before us. Because of our ruling on the issue, it is not necessary for us to consider that contention.

ing non-carbonated soft drinks, paper containers, and unsealed containers such as paper cups. They claim that the proposition on the ballot referring to *all* beverage containers was therefore misleading and deceptive and violative of the above-quoted Section 134 of Article XVII of the Charter.

■ In dealing with this argument, we say first that after the election has been held and the ordinance adopted by initiative, the ballot proposition is viewed more liberally from the standpoint of the City.[2] A ballot proposition which might have been condemned before the election will be judged less strictly after the election. *State v. Board of Examiners,* 125 Mont. 149, 239 P.2d 283, 289–290 (1951).

The rule relating to ballot descriptions of initiative propositions is fairly stated in the following language:

A ballot description must be complete enough to convey an intelligible idea of the scope and import of the proposed law; it ought not to be clouded by undue detail, or so abbreviated as not to be readily comprehensible. It must give a true and impartial statement of the purpose of the measure in such language as not intentionally to be an argument or to be likely to create prejudice either for or against the measure. Where the description must be a "fair, concise summary", it may satisfy the requirement even if it is not complete in some small matters. 42 Am.Jur.2d, Initiative and Referendum, § 46 (1969).

■ The criticism of the ballot proposition is that it is broader than the ordinance. While the ballot proposition relates to all beverage containers, the ordinance itself deals with only part of the beverage containers. We do not deem this to be fatally misleading or inaccurate. We are not persuaded that any appreciable number of voters voting to establish a mandatory refund value upon all beverage containers would have voted against a proposition to establish a mandatory refund value upon a sub-

stantial portion of such containers but excluding some from its terms. Particularly after the election has been held, the ballot title must be held to comply with the Charter standard of "a clear, concise statement, without argument or prejudice, descriptive of the substance of such ordinance".

The cases cited by appellant in support of their claim of the insufficiency of the title are cases dealing with the requirement of Section 23 of Article III of Missouri Constitution, 1945, that "no bill shall contain more than one subject, which shall be clearly expressed in its title". *508 Chestnut, Inc. v. City of St. Louis,* 389 S.W.2d 823 (Mo.1965); *State v. Currency Services,* 358 Mo. 983, 218 S.W.2d 600 (1949); *State ex rel. Toedebusch v. Public Service Commission,* 520 S.W.2d 38 (Mo.banc 1975); *State ex rel. Normandy School District of St. Louis County v. Small,* 356 S.W.2d 864 (Mo.banc 1962). In *Currency Services* and *Normandy School District,* the legislation dealt with a subject beyond the scope of the title. It was held in those cases that any portion of the legislation which exceeded the scope of the title was void. The title was too narrow for the statute. That did not require striking down the entire statute, but only that portion which was outside the title. In the case before us, however, the ballot title which was submitted to the voters was broader than the ordinance, not narrower. In *508 Chestnut* (involving a municipal ordinance rather than a statute) and in *Toedebusch,* the titles were found sufficient.

## II. CITY'S POLICE POWER: RATIONAL RELATION: EQUAL PROTECTION

■ Appellants say that the ordinance in question is an "unreasonable, arbitrary and capricious exercise of the City's police power because the ordinance is arbitrary and unreasonable and lacks a rational relation to the purpose sought to be served, namely, the reduction of litter in the City of Columbia", and therefore invalid.

---

**2.** With reference to a state initiative ballot title, § 126.081(5), RSMo 1978, specifically provides for a pre-election challenge.

Appellants, citing the testimony of their expert witness, Mr. Gilston, argue that beverage containers represent less than 20% of the total litter found in the City of Columbia. Second, they argue that the ordinance will not be effective to eliminate even that portion of Columbia's litter. They point to the fact that many people will dispose of beverage containers, foregoing the refund. They show that beverage containers purchased outside the City of Columbia, which would not be subject to the deposit-refund ordinance, would be disposed of in the City of Columbia. They point also to the beverage containers which are not covered by the ordinance including plastic and paper cups, bottles and cans which are opened before being sold, and beverages which compete with beer and carbonated soft drinks, which are available in identical containers but which are not covered by the ordinance. These considerations, argue the appellants, show that the deposit-refund ordinance has no "real and substantial relation to the object sought to be attained", namely, the "meaningful reduction of the accumulation of litter in the city".

■ In answer to appellants' contention it was first of all, not the business of the trial court, nor is it our business, to determine from the empirical evidence whether the Columbia ordinance would have the desired effect of reducing litter in the City of Columbia in an appreciable degree.[3] We might have the opinion that the ordinance was not really an effective or efficient engine to achieve the desired end. But we cannot substitute our *judicial* judgment for the *legislative* judgment of the lawmaker— in this case, the people. We examine the evidence with only the question in mind, whether the measure under attack was debatably calculated to reach the targeted evil. *City of St. Louis v. Liberman*, 547 S.W.2d 452, 457 (Mo.banc 1977); *Downing*

*v. City of St. Joplin*, 312 S.W.2d 81 (Mo. 1958); *Wagner v. City of St. Louis*, 284 Mo. 410, 224 S.W. 413, 415 (1920).

In this connection the opinion of Justice Brennan in *State of Minnesota v. Clover Leaf Creamery Company*, —— U.S. ——, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), furnishes clear guidance. In that case the Legislature had enacted a law banning plastic nonreturnable milk containers for the stated purposes of promoting resource conservation, easing solid waste disposal problems, and conserving energy. In upholding the law as against challenges identical to those made by the plaintiffs in the present case, the Supreme Court of the United States said: "Respondents apparently have not challenged the *theoretical* connection between a ban on plastic nonreturnables and the purposes articulated by the legislature; instead, they have argued that there is no *empirical* connection between the two. They produced impressive supporting evidence at trial to prove that the probable consequences of the ban on plastic nonreturnable milk containers will be to deplete natural resources, exacerbate solid waste disposal problems and waste energy, because consumers unable to purchase milk in plastic containers will turn to paperboard milk cartons, allegedly a more environmentally harmful product.

"But States are not required to convince the courts of the correctness of their legislative judgments. Rather, 'those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.' (Citations omitted.)

"Although parties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational (citation omitted), they

3. In *State of Minnesota v. Clover Leaf Creamery Company*, —— U.S. ——, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), the court said: "We express no view whether the District Court could have dismissed this case on the pleadings or granted summary judgment for the State on the basis of the legislative history, without

hearing respondent's evidence. See *Vance v. Bradley*, 440 U.S. 93, 109–112, 99 S.Ct. 939, 949–951, 59 L.Ed.2d 171 (1979); *Bayside Fish Flour Co. v. Gentry*, 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772 (1936)." —— U.S. at ——; n.8, 101 S.Ct. at 724, n.8. We make the same reservation.

cannot prevail so long as 'it is evident from all the considerations presented to [the legislature], and those of which we may take judicial notice, that the question is at least debatable.' Where there was evidence before the legislature reasonably supporting the classification, litigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken.... Whether *in fact* the Act will promote more environmentally desirable milk packaging is not the question: the Equal Protection Clause is satisfied by our conclusion that the Minnesota Legislature *could rationally have decided* that its ban on plastic nonreturnable milk jugs might foster greater use of environmentally desirable alternatives." —— U.S. at ——— ———, 101 S.Ct. at 723–725.

Appellants do not contend, however, that the ordinance is unreasonable and therefore invalid simply because it will, as they contend, be ineffectual to accomplish its announced purpose—but, they say, when the ordinance also imposes harsh and unusual restrictions on private business, and where other less costly means of litter control are available, it passes beyond the pale of the reasonable exercise of the city police power, and becomes unreasonable, arbitrary and capricious, and therefore invalid.

Plaintiffs presented a great deal of testimony on the adverse economic effect which the enforcement of the ordinance would have upon bottlers, distributors and retailers of beverages affected by the ordinance. Mr. Lillis, vice-president of intervenor-plaintiff Coca-Cola Bottling Company of Mid-America, Inc., and Mr. McDaniel, an employee of the Coca-Cola Company of Atlanta, Georgia, testified that the ordinance would have the effect of changing the "package mix" in Columbia. The pre-ordinance ratio between nonreturnable, no-deposit containers to refillable, deposit-bearing returnable containers is 60% to 40%. Of the nonreturnable 60%, there are five cans to one bottle. The ordinance, however, would have the effect of changing the package mix to 85% returnable bottles and 15% returnable cans. This change would require for plaintiff Coca-Cola Bottling Company of Mid-America, Inc., two additional route trucks and one additional tractor and side-loading trailer at a cost of $116,000. It would require additional warehouse space at a cost of $122,080. It would require for a "bottle float" $50,076, plus an additional $12,055 for shelves or cases for the new glass returnable bottles. The operation of the additional delivery truck, depreciation expense, cost of capital and other expenses would amount to an annual increase in operating cost, net of unclaimed refunds and scrap value would be $96,916 per annum, or 35.1 cents per case. Other bottlers and distributors of beer and carbonated soft drinks testified to similar costs and inconveniences. None of the others undertook to place a dollar value on their increased costs or reduced sales, but they described the following burdens placed upon them by the ordinance: All testified to the changed "package mix", with an increase in bottles and a decrease in cans. This would require more warehouse space, more retail display space, and more delivery equipment to handle the same volume. It would require more delivery and handling time, including picking up and returning empty returned containers. The stamping of bottles with the word "Columbia" would involve the expense of additional labor. It would require segregating Columbia containers from out-of-Columbia containers. The required deposit and the increased prices necessitated by additional costs would reduce sales; the customers would change to unregulated beverages, or would make their purchases outside the City of Columbia.

The actual economic impact of the can and bottle regulation is speculative. That it will require a certain amount of adjustment on the part of purveyors is clear. What costs can be passed on to the consumer in the form of increased prices will be dictated by the market forces. No one testified that any of the plaintiffs would be priced out of business, although some brands with a small sale in Columbia might withdraw from the Columbia market.

■ Given a rational relationship between the legislative measure and the evil

sought to be remedied, the cost of compliance argument is out of place in a Federal due process analysis. In *Brotherhood of Loc. F. & E. v. Chicago, R.I. & P.R. Co.*, 393 U.S. 129, 143, 89 S.Ct. 323, 330, 21 L.Ed.2d 289 (1968), the court said:

"The railroads also argue that the statutes violate the Due Process Clause because they are 'unduly oppressive' and impose costs on the regulated industry that exceed the public benefits of the regulation. . . . Insofar as these arguments seek to present an independent basis for invalidating the laws, apart from any effect on interstate commerce, we think, with all due deference to appellees and the District Court, that these contentions require no further consideration. *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Olsen v. State of Nebraska*, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305 (1941); *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *Nebbia v. People of State of New York*, 291 U.S. 502, 54 S.Ct. 505, 79 L.Ed. 940 (1934)."

*See also, American Can Co. v. Oregon Liquor Control Com'n*, 15 Or.App. 618, 517 P.2d 691, 703 (1973).[4]

Plaintiffs quote from *Goldblatt v. Town of Hempstead, New York*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962), certain language lifted in turn from *Lawton v. Steele*, 152 U.S. 133, 14 S.Ct. 499, 38 L.Ed. 385 (1894). *Goldblatt*, however, when read as a whole is not inconsistent with the cases cited in support of our holding herein, and it does not support plaintiffs' position.

▮ Nor does it aid plaintiffs that other means of litter control, less expensive and more palatable to them, might have been available. The legislative body may select which of a variety of approaches it will adopt. *American Can Co. v. Oregon Liquor Control Com'n, supra*, 15 Or.App. 618, 517 P.2d at 699, 700.

## III. CLASSIFICATION: EQUAL PROTECTION: DUE PROCESS: SPECIAL LAW

▮ Appellants' next attack upon the ordinance is based upon its classification of beverage containers covered by the ordinance and those excluded from its operation. The beverages whose containers are subject to the refund requirement are: "Beer or other malt beverages and mineral waters, soda water and carbonated soft drinks in liquid form and intended for human consumption." A container is defined by the ordinance as an "individual sealed and separate bottle, can, jar or carton composed of glass, metal, paper, plastic, or any combination of these materials". Containers made of biodegradable materials are excepted from the operation of the ordinance.

The inclusion of these containers in the ordinance, and the exclusion of all others, is said by the appellants to be an unreasonable and arbitrary classification. They point out that non-carbonated soft drinks are sold in containers like those containing carbonated soft drinks, yet are not subject to the ordinance. There was evidence that Countrytime lemonade, a non-carbonated soft drink, was being sold in a container identical to those used for carbonated soft drinks, and by the same distribution methods and at the same points of sale. Beer containers are included, while containers of other alcoholic

4. For an example of an ordinance exceeding the City's police power, see *Olympic Drive-In Theatre, Inc., v. City of Pagedale*, 441 S.W.2d 5 (Mo.1969). The ordinance required screening a drive-in movie screen from the view of passing motorists. The cost would have been $250,000–$280,000, and would have caused the theatre to close down. The theatre had been built in compliance with a city permit and had been in operation four years. Said the court: "Such use of the premises was a vested right of which the City could not arbitrarily deprive plaintiffs . . . The situation is comparable to the attempted terminating of a pre-existing lawful nonconforming use of property, which the zoning cases have held to be an unconstitutional taking of private property without due process of law and a deprivation of prior vested property rights . . ." *Id.* at 9. Compare, however, *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).

beverages, such as wine and canned cocktails, are excluded. They point to the inclusion of non-carbonated mineral water as the only non-carbonated drink included. They say that it is unreasonable to include "sealed" containers while excluding one where the seal is broken before the product is sold, as in the sale of a soft drink at a gasoline station, and excluding carbonated soft drinks sold in open-top cups.

These classifications, say the appellants, are arbitrary, artificial, and discriminatory, and therefore in violation of § 40(30) of Article III of the Missouri Constitution, prohibiting special laws, and violative also of the Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution and of Article I, Section 2 of the Missouri Constitution. Like the question of the presence of a rational basis for the legislative bodies suiting a particular statutory weapon against a particular evil to be remedied, the question of classification is for the legislative body and the courts will not interfere, "if any state of facts reasonably may be conceived to justify" the classification. *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *Bowie Inn, Inc. v. Bowie*, 274 Md. 230, 335 A.2d 679, 73 A.L.R.3d 1079 (Md.App.1975). The Court of Appeals of Maryland considered the same attack upon a municipal ordinance in *Bowie, supra.* Said the court: "Moreover, 'a classification having some reasonable basis does not offend against the equal protection clause merely because it is not made with mathematical nicety or because in practice it results in some inequality.' (Citations omitted.) Furthermore, legislative bodies are not required by the Equal Protection Clause to attack all aspects of a problem at the same time. The legislative body may select one phase of a problem and apply a remedy there, neglecting for the moment other phases of the problem." (Citations omitted.)

The Maryland Court continued: "The members of the City Council may well have concluded that soft drink and malt beverage containers were the principal source of that type of litter which most needed to be eliminated. They may have decided that other beverage containers were less likely to be discarded along the roadside and thus did not constitute a threat to the environment of Bowie. They may have concluded that the requirement of a mandatory deposit on soft drink and malt beverage containers would be easier to carry out than a deposit requirement on all beverage containers since soft drinks and beer have traditionally been sold in returnable containers requiring payment of a deposit. In short, there are many reasonable grounds which may justify the ordinance." 335 A.2d at 686.

The appellants have not cited, nor have we been able to locate, any case where such a classification as the one now under consideration has been held invalid. On the other hand, similar arguments have been rejected, and ordinances and statutes containing similar classifications have been upheld in a number of cases. *Bowie, supra; American Can Co. v. Oregon Liquor Control Com'n, supra; Anchor Hocking Glass Corp. v. Barber*, 118 Vt. 206, 105 A.2d 271 (1954).

The fact is that there was before the trial court in this case evidence justifying the ordinance's classifications. In the carbonated as against non-carbonated containers, there was testimony before the court that litter counts established that non-carbonated soft drink containers represented only a tiny part of the litter. In one litter survey, only 12 out of 4,962 beverage cans and bottles collected were non-carbonated soft drink or other unregulated beverage containers. Defendants' witness, Dr. Carroll, testified that 73% of the non-biodegradable items he picked up in his count were containers regulated by the ordinance, while only 3% of the total non-biodegradable litter that he collected was miscellaneous cans and bottles, including non-carbonated, non-regulated beverage containers as well as oil cans and all other types of glass and metal containers. There was testimony before the court that the usual fast-food beverage cup is made of paper or plastic which has a shorter life than the regulated containers. As to the failure to include such items as

containers of wine and canned cocktails, there is no evidence that wine bottles or canned cocktail bottles constituted any significant percentage of the litter. As to the sale of unsealed cans or bottles, which if sealed would be subject to the ordinance, it may be assumed that they would ordinarily be consumed on the premises where purchased, and the containers disposed of there—but if they made their way into the litter, they would constitute scarcely a perceptible part of the total. As to the mineral water, there was no evidence before the court specifically about mineral water containers. If they were carbonated, they could logically be classified along with carbonated soft drinks. It may be that the observation of the Columbia voters was that the litter included mineral water containers in sufficient quantities to make it desirable to include them in the ambit of the ordinance. It was the appellants' burden to show the unreasonableness of their inclusion. They have failed to so show. *State ex rel. Toedebusch v. Public Service Com'n, supra,* 520 S.W.2d at 47 [9]; *State v. Terrell,* 303 S.W.2d 26, 28 (Mo.1957).

The trial court was justified in finding that the inclusion of the items regulated by the ordinance, and the exclusion of others, was not arbitrary or capricious. The ordinance does not in that respect offend against the Equal Protection Clause of the Fourteenth Amendment or Article I, Section 2, of the Missouri Constitution. Neither does the ordinance offend against Article III, Section 40 (30) of the Missouri Constitution.

### IV. VOID FOR VAGUENESS

The appellants' next attack upon the ordinance is that it is so vague "that a person of ordinary intelligence cannot determine what conduct is lawful and that which is unlawful". This fault, the appellants argue, condemns the ordinance under the due process clause of the Fourteenth Amendment to the United States Constitution.

■ They first see problems in the word "sealed", and claim that they cannot in some instances tell a sealed container from one that is not sealed. They suppose that a sealed container is one which does not leak, but they wonder about a paper or plastic cup with a lid. They are unable to tell whether the ordinance applies to an outer package containing six, or twelve or twenty-four bottles of beer, or whether it applies only to the individual bottles or cans therein contained. They find difficulties in defining the word "biodegradable" which they argue lacks "certainty and definiteness". The ordinance defines as biodegradable "material which is capable of being broken down by bacteria into its component elements"—an incorrect definition of the word, according to the testimony of witness Professor DeChazal, who testified that when a product biodegrades it is not broken down into its component elements. (However, when the ordinance itself defines a word, the word when used in that ordinance carries with it the ordinance's definition. *In re Estate of Hough,* 457 S.W.2d 687, 691 (Mo.1970)). And how soon, ask the appellants, must the biodegradation take place, and under what circumstances and in what place?

■ It may be, as appellants suggest, that in peripheral cases the administrative officers of the city, the distributors, and then the retailers, and finally the courts, may have to wrestle with whether a particular container is "sealed", or is "individual", or is biodegradable. In some cases, it is true, it may not be entirely clear whether a given container is inside or outside the reach of the ordinance. Often that is the case with statutory terms. They clearly cover a large field, and they clearly exclude a large field—but difficult problems of meanings of words occur near the indistinct boundary between the included and the excluded. The prospect of some difficulties in definitions do not invalidate an ordinance or a statute. *State v. Errington,* 355 S.W.2d 952, 955 (Mo.banc 1962); *United States v. National Dairy Products Corp.,* 372 U.S. 29, 32, 83 S.Ct. 594, 597, 9 L.Ed.2d 561 (1963); *State v. Katz Drug Co.,* 352 S.W.2d 678, 683–4 (Mo.banc 1961).

In the case before us there is a large field specifically included within the reach of the ordinance. They are glass bottles and metal cans in which carbonated beverages are sold. There is no question that they are sealed containers, there is no question that they are individual containers, there is no question that they are non-biodegradable, by the definition contained in the ordinance. In fact, a stipulation of the parties in the present case, says that "the plaintiffs in this cause handle beverage containers under the definitions in this ordinance, which are limited to aluminum cans, steel cans, returnable glass bottles and nonreturnable glass bottles".

██ The ordinance now under review is distinguishable from those struck down in the cases cited by the appellants. In *Harvey v. Priest*, 366 S.W.2d 324 (Mo.banc 1963), a general prohibition against Sunday sales yet allowed the sale of "drugs or medicines, provisions or other articles of immediate necessity." The phrase "provisions or other articles of immediate necessity" was such a vague standard as to be unenforceable. In *Missouri Pacific Railway Company v. Morris*, 345 S.W.2d 52 (Mo.banc 1961), a statute exempted from taxation certain goods which were "not readily obtainable in the State of Missouri." The court saw in the determination of the ready obtainability of goods in the State of Missouri as imposing "an impossible and an undue burden on any purchaser or enforcing officer". And finally in *St. Louis County v. McBride and Sons, Inc.*, 487 S.W.2d 878 (Mo.App.1972), the ordinance there struck down for vagueness prohibited "dumping, accumulation or storage" of trash and garbage. Said the court: "There is no limitation, qualification or standard set out in this ordinance. It is too vague to permit one and only one reasonable interpretation". In our case there is no such fatal vagueness as in the three cases cited. The problems of definition will be few and only in marginal cases, for the ordinance is very clear in its coverage of a large number of items. The definition problems anticipated by plaintiffs can be easily resolved in most cases by administrative rule—for which the ordinance provides—or by amendment. *See Bowie Inn, Inc., v. Bowie, supra* 274 Md. 230, 335 A.2d at 685.

## V. LIQUOR CONTROL LAW

The ordinance requires that a container subject to the ordinance, before its sale within the City of Columbia, be "indelibly marked with the word 'Columbia', either by embossing or by a stamp, label or other method affixed thereto, in not less than one-quarter inch type size". This is an essential feature of the ordinance, for it identifies the containers which were purchased in Columbia for the purpose of making the refund.

Appellants say that this feature of the ordinance, as applied to alcoholic beverages—beer and other malt beverages—is invalid because in conflict with § 311.660 and § 312.360, RSMo 1978. The latter section provides that "the Supervisor of Liquor Control shall have the authority to ... make the following regulations ... as to the following matters, acts, and things:

"(9) Prescribe all forms of labels to be affixed to all packages containing non-intoxicating beer of any kind."

Section 311.660 uses the same language to give the Supervisor the same power with respect to intoxicating liquors.

Appellants underline the word "all" in paragraph (9) of the above § 312.360. They argue that the state by this statute has preempted the field of labeling of containers of intoxicating liquor and non-intoxicating beer and that the City cannot therefore enter into a field by requiring the word "Columbia" to be stamped on the bottles. They put forward also a related argument that the labeling requirement of the ordinance is in conflict with the state statute.

The Supervisor of Liquor Control, under the authority granted by the above statute, has adopted three labeling regulations. They respectively incorporate Federal requirements, require container labels to identify the manufacturer of the malt beverage and require non-intoxicating beer container labels to state an alcohol percentage not exceeding the prescribed maximum.

First, the question of preemption of the field: Appellants do not seem to argue that the field of regulation or intoxicating beverages and non-intoxicating beer has been preempted by the state, thus excluding the City of Columbia from any power to legislate upon the same subject. That the state has not preempted the field of regulation of intoxicating beverages and non-intoxicating beer is now well settled. *Passler v. Johnson*, 304 S.W.2d 903, 907 (Mo.1957); *City of Maryville v. Wood*, 358 Mo. 584, 216 S.W.2d 75 (1948); *Nickols v. North Kansas City*, 358 Mo. 402, 214 S.W.2d 710 (1948); *State v. Womach*, 355 Mo. 486, 196 S.W.2d 809 (1946). Appellants argue, however, that the state has preempted the very narrow area of labeling upon the containers. We have not seen the doctrine of preemption applied in such a small area as the labeling of certain cans and bottles, and the appellants cite no case either within or without this state which support their argument. We do not see that the authority of the Supervisor of Liquor Control to prescribe all forms of labels to be affixed to the containers in question indicates the state's intention to establish exclusive possession of that small area, thus excluding Columbia's requiring the word "Columbia" to be lettered on the containers covered by the ordinance.

Neither is there any conflict between the container-marking requirement of the ordinance and the liquor control law. It is true that any municipal ordinance regulating the subject of intoxicating beverages and non-intoxicating beer must be in harmony with the state law on those subjects, and are invalid to the extent that they conflict with the state law. *Passler v. Johnson, supra* 304 S.W.2d at 907; *City of Maryville v. Wood, supra; Nickols v. North Kansas City, supra; State v. Womach, supra; City of Flat River v. Mackley*, 212 S.W.2d 462, 468 (Mo.App.1948). But the ordinance here does not prohibit anything which is permitted by the state law on the subject, nor does it permit anything which the state law prohibits. It is entirely consistent with the state law.[5]

## VI. INTERSTATE COMMERCE

Appellant's next attack upon the ordinance is that it places an undue burden on interstate commerce in violation of Article I, Section 8, Clause 3, of the United States Constitution. This contention is answered adversely to appellant by *State of Minnesota v. Clover Leaf Creamery Co., supra.* The Columbia ordinance does not discriminate between interstate and intrastate commerce. It regulates evenhandedly by applying the deposit-refund requirements to all the containers within its scope without regard to whether they are from inside the state or outside. There is no discrimination against interstate commerce. The controlling question then becomes whether the incidental burden imposed on interstate commerce by the Columbia ordinance is "clearly excessive in relation to the putative local benefits". *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). We find no such invalidating disproportion, and decline to strike down the ordinance on that ground.

There is an undoubted local interest in environmental protection and resource conservation. The appellants cite us to the statement of facts contained in their brief for a description of the burden upon interstate commerce:

A portion of both beer and soft drinks which are ultimately sold in the City of Columbia come into the state from outside the State of Missouri and, thus, are

---

**5.** It is not necessary to be reached in this opinion, but the point is made by respondents that intoxicating beverage and non-intoxicating beer containers are on no different footing than soft-drink containers since the ordinance is not aimed at the regulation of those beverages, but only at the containers. The fact that the bottles and cans may contain, or have contained, non-intoxicating beer or intoxicating liquors is merely incidental. The statute is aimed at litter control rather than liquor control. *See State ex rel. Glendinning Companies of Connecticut, Inc. v. Letz*, 591 S.W.2d 92 (Mo.App.1979); *American Can Co. v. Oregon Liquor Control, supra*, 15 Or.App. 618, 517 P.2d at 705 (Or.App. 1973). See also *Milgram Food Stores, Inc., v. Ketcham*, 384 S.W.2d 510, 513 (Mo.1964).

in interstate commerce. Some brands, particularly those which do not enjoy large volumes of business in Columbia, will be foreclosed from the Columbia market by reason of the ordinance. Returnable containers are simply not practical for some brands which come from great distances, such as foreign beers, and the necessity for separation and special handling will cause the retailers not to deal in those products which have limited volume.

In other places, where mandatory refund systems have been put into effect, the result has been to eliminate slower selling brands. Other products, which will not be foreclosed from the market, will nevertheless be burdened by the Ordinance in the form of additional costs and put the competitive disadvantage set forth above.

There is nowhere in the evidence any attempt to estimate the volume of the brands which may not find it profitable to continue in the Columbia market.

A similar argument to that made by appellants here was made in the *Clover Leaf Creamery* case. The court answered it this way:

> Within Minnesota, business will presumably shift from manufacturers of plastic non-returnable containers to producers of paperboard cartons, refillable bottles, and plastic pouches, but there is no reason to suspect that the gainers will be Minnesota firms, or the losers out of state firms. Indeed two of the three dairies, the sole milk retailer and sole milk container producer challenging the statute in this litigation are Minnesota firms.

In the case before us, as in *Clover Leaf Creamery*, there is nothing to show that the customers for the beverages which may no longer be found in the Columbia retail outlets will shift to intrastate beverages in preference to out-of-state beverages. It appears that most if not all the 14 plaintiffs are Missouri firms. The intervenor, the Coca-Cola Bottling Company of Mid-America, Inc., has its administrative offices in Lenexa, Kansas, but apparently services Columbia and the surrounding area through a locally based division.

We have examined the cases cited by the appellants in support of their position— *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 65 S.Ct. 1515, 89 L.Ed. 1915 (1941) (state law restricting train lengths); *Pike v. Bruce Church*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) (state law requiring crating of melons before interstate shipment, when grower's practice was to transport across nearby state line for crating and shipment); and *City of Philadelphia v. New Jersey*, 437 U.S. 617, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978) (state law prohibiting bringing into state solid or liquid wastes from another state)—and note that all of them involve direct and immediate burdens upon interstate commerce far removed from the remote, indirect and incidental effects which the present ordinance may have upon interstate commerce.

## VII. AMENDMENT OF ORDINANCE: EFFECTIVE DATE OF ORDINANCE

Appellants claim that a certain amendment of the ordinance by the City Council of Columbia was invalid because the purported amendment was within six months of the effective date of the ordinance and was by less than a unanimous vote of the Council. Article XXII, Section 135 of the Columbia Home Rule Charter provides that when an ordinance is adopted by the initiative method, as this one was, it cannot be amended within a period of six months after its effective date except by the unanimous vote of the City Council.

The amendment changed three provisions of the ordinance which in their original form invalidated the entire ordinance, according to appellants. To base an attack upon those unamended provisions of the original ordinance, appellants must show us that the City Council's attempt to amend the ordinance was in vain. We find, however, that the Council's amendment of the ordinance was effective, and therefore it is not necessary for us to consider appellants' challenge to the ordinance which is based

upon provisions of the ordinance which have been changed by amendment.

The original ordinance was approved at an election held on April 5, 1977. By its terms it was to become effective in 90 days, on July 4.

Before the effective date of the ordinance, however, and on June 29, the court entered its temporary restraining order restraining the City of Columbia from enforcing the ordinance. On July 29, 1977, after a hearing, a temporary injunction was granted, enjoining the defendant from the enforcement of the ordinance. On February 20, 1978, the City Council adopted the challenged amendment. Appellants claim that, because of the injunction, the ordinance had never become effective and therefore, the amendment of the ordinance by the City Council—by less than a unanimous vote—was a nullity.

They cite no cases to support their position.

■ The injunction had no direct effect on the ordinance, but only operated against the City and its officials to prevent them from enforcing the ordinance. *Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). The ordinance was in effect from the "effective date", i. e., July 4, 1977, even if it was not enforced against the named plaintiffs or against anyone else. *White v. Delano,* 270 Mo. 16, 191 S.W. 1012, 1017 (1916). *See also Town of Fond du Lac v. City of Fond du Lac,* 22 Wis.2d 525, 126 N.W.2d 206, 208 (1964). Six months having passed from the effective date of the ordinance, the amendment could be adopted by less than a unanimous vote of the Council.

## VIII. EXCLUSION OF EVIDENCE: APPLICABILITY OF ORDINANCE TO UNIVERSITY OF MISSOURI CAMPUS

Appellants complain of the exclusion of certain evidence offered to them by witness Gilston. Witness Gilston was testifying to the effect which the ordinance would have in the elimination or reduction of litter in the City of Columbia. Appellants' attorney then asked witness Gilston whether the ordinance would have yet less effect in the reduction of litter if the ordinance did not apply to beverages sold on the University of Missouri campus. (Other evidence had shown that something like 1,800,000 containers of the kind covered by the ordinance were sold on the University of Missouri campus each year.) The respondents' objection to the testimony was sustained, and appellants' offer of proof of an affirmative answer from the witness was denied.

■ Appellants cite us to only one case, and that is an unpublished memorandum of a circuit court judge in Jackson County holding that the University of Missouri in the construction of a new pharmacy school was not subject to the provisions of Kansas City's building code. There is no appellate court decision of similar import. While the viewpoint of the University of Missouri or of merchants conducting business on the University of Missouri campus is not represented in this case, still there is no reason to assume that the ordinance now under examination would not be effective on the University of Missouri campus within the City of Columbia. *See Kansas City v. School District of Kansas City,* 356 Mo. 364, 201 S.W.2d 930 (1947); *Bredeck v. Board of Education of City of St. Louis,* 213 S.W.2d 889 (Mo.App.1948); *Kansas City v. Fee,* 174 Mo.App. 501, 160 S.W. 537 (1913).

## CONCLUSION

We hold the ordinance valid as against the attacks made upon it by appellants. The judgment of the trial court is affirmed.

All concur.