Dear Mr. Pelzer:
This opinion is in response to your request, filed pursuant to Section 27.040, RSMo 1978,[1] for an opinion on the following question:
 Does the State of Missouri have a demonstrable legal interest under State Statute in certain unclaimed funds recovered from National Banks prior to 1933 by the Office of the Comptroller of Currency pursuant to 12 U.S.C. § 216.
 12 U.S.C. § 216 to 216d (1982) and the Rules Implementing Section 408 of the Garn-St Germain Depository Institutions Act of 1982, P.L. 97-320, 96 Stat. 1469, 1513-1515, 48 Fed. Reg. 30006-30008, 30012-30078 (Wednesday, June 29, 1983) (to be codified at 12 C.F.R. Sections 33.1 to 33.7) provide procedures to facilitate the disposition of unclaimed property[2] recovered from national banks and banks in the District of Columbia that were closed before and during the 1930's by receivers appointed by the Office of the Comptroller of the Currency.
12 C.F.R. Section 33.4(f), 48 Fed. Reg. 30007 (Wednesday, June 29, 1983) states:
 (f) Claims filed by the states. Claims may be filed by states that, under their applicable statutory law, can assert a demonstrable legal interest in the property. State claims will be considered after claims filed by other persons have been determined. In accordance with instructions to the claims form, a claim filed by a state will be accompanied by an opinion from the state's highest legal official (e.g., attorney general) concerning the applicability of relevant state statutory laws and procedures that authorize the state to take possession of the unclaimed property.
 I. Uniform Disposition of Unclaimed Property Act
The Second Regular Session of the Eighty-Second General Assembly of the State of Missouri passed House Bill No. 1088 (hereinafter sometimes referred to as "H.B. 1088"), a copy of which is enclosed. Sections 1 to 30 thereof is Missouri's version of the Uniform Disposition of Unclaimed Property Act (Revised 1966), 8A U.L.A. 135-213 (1983) Cumulative Annual Pocket Part 13-19 (1984). House Bill No. 1088 will become effective on August 13, 1984.[3]
 12 U.S.C. § 216b(a)(1) (1982) and 12 C.F.R. Section 33.4(c), 48 Fed. Reg. 30007 (Wednesday, June 29, 1983) provide that all claims for unclaimed property must be filed with the Comptroller of the Currency within twelve months following the publication of the final notice of claims by the Comptroller; such notice contains, in part, the names and locations of affected closed banks and the names of unlocated bank customers. 48 Fed. Reg. 30012-30078 (Wednesday, June 29, 1983).
The effective date of H.B. 1088 occurs after the expiration of the claims filing period.
However, the Supreme Court of Missouri has begun to give litigants the benefit of newly enacted laws prior to the effective date of such enactments. See In re Marriage of Holt, 635 S.W.2d 335,337-338 (Mo. banc 1982); State ex rel. Robards v. Casteel, 630 S.W.2d 583,584 (Mo. banc 1982); State ex rel. Mendell v. Schoenlaub,630 S.W.2d 584 (Mo. banc 1982). Upon the filing of a claim, the State of Missouri would become a litigant and is entitled to the benefit of newly enacted legislation, even before the effective date of such legislation.
Section 2(4) of H.B. 1088 states in part:
 Section 2. The following property held or owing by a banking or financial organization or by a business association is presumed abandoned; . . .
. . .
 (4) Any funds or other personal property, tangible or intangible, removed from a safe deposit box or any other safekeeping repository or agency or collateral deposit box in this state on which the lease or rental period has expired due to nonpayment of rental charges or other reason, or any surplus amounts arising from the sale thereof pursuant to law, that have been unclaimed by the owner for more than seven years from the date on which the lease or rental period expired.
Section 1(1) of H.B. 1088 defines the term "banking organization" as meaning "any bank, trust company, or safe deposit company, engaged in business in this state;". (Emphasis added.) We believe that this definition includes nationally chartered, as well as state-chartered, banks.
Section 11 of H.B. 1088 requires the filing of reports of abandoned property with the Director of the Department of Consumer Affairs, Regulation and Licensing (hereinafter sometimes referred to as "CARL"), and Section 13 of H.B. 1088 requires the delivery of such reported property to CARL.
Section 2(4) of H.B. 1088 applies to safe-deposit boxes in the State of Missouri. Assuming that the safe-deposit boxes of the national banks listed in the notice at 48 Fed. Reg. 30048-30049 (Wednesday, June 29, 1983) are located in Missouri, the state has a demonstrable legal interest in the contents of the safe-deposit boxes of the following closed banks: The First National Bank of Brunswick, The First National Bank of Campbell, The First National Bank of Caruthersville, The First National Bank of El Dorado Springs, The First National Bank of Rolla, The Cherokee National Bank of St. Louis, The Grand National Bank of St. Louis, The Vandeventer National Bank of St. Louis, and The St. Louis National Bank.
Article I, Section 13, Missouri Constitution, prohibits the General Assembly of the State of Missouri from enacting retrospective legislation. Although we are applying H.B. 1088, which was enacted in 1984, to national banks closed before and during the 1930's, we do not believe such application violates this constitutional provision for two reasons.
First, in enacting Section 408 of the Garn-St Germain Depository Institutions Act of 1982, P.L. 97-320, 96 Stat. 1469, 1513-1515, we believe the United States Congress intended to create a federal relation-back doctrine, that allows state laws to relate back to the time the national banks in question closed, by operation of federal law.
Senate Report No. 536, 97th Cong., 2d Sess. at 29, reprinted in
1982 U.S. Code Cong. Ad. News 3054, 3083, states in part:
 A state may assert a right to possession of any unclaimed property during the twelve month claim period if it has a law, whenever adopted, that permits it to take custody of such property.
(Emphasis added.) We believe the "whenever adopted" language recognizes a federal relation-back theory, which allows state laws to relate back by virtue of federal law. Because the relation-back is based on federal law, the prohibition in Article I, Section 13, Missouri Constitution, against retrospective state legislation is not applicable.
The second reason we believe that Article I, Section 13, Missouri Constitution, does not apply is that this constitutional provision does not apply against the State of Missouri. See State ex rel. Meyer v.Cobb, 467 S.W.2d 854, 856 (Mo. 1971). Stated differently, if the General Assembly wishes statutes to apply retrospectively as against the State of Missouri, they will.
A basic difference between escheat laws and unclaimed property laws is that under the former the state takes title to the property after the expiration of a specified period of time, and the true owner's claim is forever barred, while under the latter, sometimes referred to as custodial acts, the state takes possession and use of the property while it remains unclaimed, but the true owner's claim is never barred. Comment, Unclaimed Property — A Potential Source of Non-Tax Revenue,
45 Mo. L. Rev. 493, 494 (1980).
The Prefatory Note to the Uniform Disposition of Unclaimed Property Act (Revised 1966), 8A U.L.A. 135, 136-137 (1983), states in part:
 The Uniform Act is custodial in nature — that is to say, it does not result in the loss of the owner's property rights. The state takes custody and remains the custodian in perpetuity. Although the actual possibility of his presenting a claim in the distant future is not great, the owner retains his right of presenting his claim at any time, no matter how remote.
Missouri's adoption of the Uniform Disposition of Unclaimed Property Act abridges the state's right to claim title to such property under statutory or common law escheat provisions; it does not result in the loss of any citizen's property rights. Accordingly, because only the property rights of the state are involved, Article I, Section13, Missouri Constitution, is inapplicable.
Section 15.1 of H.B. 1088 states:
 Sections 1 to 30 of this act shall not affect property the title to which is vested in the holder by the operation of a statute of limitations prior to the effective date of this act, nor to any property held in a fiduciary capacity that was unclaimed property prior to August 13, 1974.
In Missouri, statutes of limitation are procedural in character and may not vest one with a substantive property right. See, e.g.,State ex rel. Research Medical Center v. Peters, 631 S.W.2d 938
(Mo.App. 1982). One cannot become vested with a property interest by operation of a statute of limitations in Missouri. Neither is there anything that would lead us to believe that the Comptroller of the Currency is holding or that the closed national banks in question held this property in a fiduciary capacity.
Accordingly, we believe that the State of Missouri has a demonstrable legal interest in the property in question by virtue of H.B. 1088.
 II. Escheat
If our conclusion in I, infra, is incorrect, we believe that the State of Missouri has a demonstrable legal interest in this property by virtue of its escheat laws.
 A. Statutory Escheat
Section 470.010, RSMo 1978, states:
 If any person die intestate, seized of any real or personal property, leaving no heirs or representatives capable of inheriting the same; or, if upon final settlement of an executor or administrator, there is a balance in his hands belonging to some legatee or distributee who is a nonresident or who is not in a situation to receive the same and give a discharge thereof or who does not appear by himself or agent to claim and receive the same; or, if upon final settlement of an assignee for the benefit of creditors, there shall remain in his possession any unclaimed dividends; or, if upon final report of any sheriff to the court, it is shown that the interests in the proceeds of the sale of land in partition of certain parties, who are absent from the state, who are nonresidents, who are not known or named in the proceedings, or who, from any cause, are not in a situation to receive the same, are in his hands unpaid and unclaimed; or, if, upon final settlement of the receiver of any company or corporation which has been doing business in this state, there is money in his hands unpaid and unclaimed, in each and every such instance such real and personal estate shall escheat and vest in the state, subject to and in accordance with the provisions of sections 470.010 to 470.260.
(Emphasis added.)
In Jones v. Fidelity Nat. Bank Trust Co. of Kansas City,362 Mo. 712, 243 S.W.2d 970 (banc 1951), copy enclosed, the court dealt with the following factual situation. On March 3, 1933, the Fidelity National Bank and Trust Company (hereinafter sometimes referred to as "National Bank"), a national banking association, and Fidelity Savings Trust Company (hereinafter sometimes referred to as "Missouri Corporation"), a Missouri corporation that was a wholly owned subsidiary of the National Bank, were closed because of financial difficulties and shortly thereafter reopened on a restricted basis; the National Bank was under the control of a federal conservator and the Missouri Corporation was under the control of a special deputy commissioner of finance. A reorganization plan for the National Bank was approved pursuant to 12 U.S.C. § 207. A reorganization plan for the Missouri Corporation was approved pursuant to Section 362.505, RSMo 1949. Both of these statutes require a substantial percentage of the creditors to consent to the reorganization plan. As part of the plans, trust indentures were entered into by the banks and certain trustees were appointed to liquidate the remaining assets of the banks for the benefit of the creditors. After liquidating the assets of the banks and paying prior loans, the trustees declared liquidating dividends to certificate holders.
The trustees brought two class actions, in part, to determine the rights of persons owed liquidating dividends who had not been located. The Attorney General of Missouri intervened, claiming, in part, that all unpaid dividends should escheat to the State of Missouri under Section 470.010, RSMo 1949, or under the doctrine ofbona vacantia. Both class actions were consolidated on appeal.
The court indicated that the trust arrangement used to liquidate these banks was a common law assignment for the benefit of creditors, and that the unclaimed dividends of such would escheat to the state pursuant to Section 470.010, RSMo 1949.
Accordingly, if any of the property in question represents the unclaimed dividends of a bank liquidation, then under Jones, the State of Missouri may have a demonstrable legal interest in such. One way that the contents of a safe-deposit box could represent the unclaimed dividends of a bank liquidation is if the otherwise liquidated bank has a claim for unpaid rent against the contents of the safe-deposit box. Such a claim is in the interest of the creditors and might result in unclaimed dividends that escheat to the State of Missouri under Jones.
Generally though, the relationship between a bank and a person who rents a safe-deposit box from the bank is that of bailee or bailor.Kramer v. Grand National Bank of St. Louis, 336 Mo. 1022,81 S.W.2d 961 (1935); Section 362.485(1), RSMo Supp. 1983. Accordingly, the contents of safe-deposit boxes are not usually liquidated for the benefit of creditors.
In addition to the claim under the Jones case, the State of Missouri may establish a demonstrable legal interest in the contents of these safe-deposit boxes under Sections 108 and 169 of S.B. 418, 1915 Mo. Laws 102, 155-157, 191-193 (hereinafter sometimes referred to as "S.B. 418") (copies enclosed) (presently codified at Section362.485, RSMo Supp. 1983).[4]
Section 108 of S.B. 418 prescribes the following procedures with regard to unclaimed safe-deposit boxes in every "bank doing a safe deposit business"[5], 1915 Mo. Laws at 155: If any amounts due any bank for the rental of a safe-deposit box remains unpaid for one year, such bank sends the record "owner" of the box a notice that if the amount due for the safe-deposit box rental is not paid within thirty days, the bank will open the safe deposit box, inventory the contents, seal them, and place them in the bank's vault.
Section 108 of S.B. 418 then specifies procedures for the opening, inventorying, etc., of the safe-deposit boxes if the rent bill remained unpaid at the end of the thirty-day period. In part, these procedures included the sending of a notice of the opening of the safe-deposit box to the record owner. The record owner was then given a two-year period from the mailing of such notice to pay the rent due and other charges. At the expiration of the two-year period, another notice was sent to the owner informing him or her that the bank would sell the property not less than thirty days after the time of the mailing of the notice of sale. There were also provisions for the sale of the property at public auction and for the deduction of all rental charges from the sale proceeds. The balance, if any, is held by the bank in a special deposit; however, the bank was required to pay such amount to the owner of the property, the assignee of the property, or the legal representative on demand with satisfactory evidence of identity. If the funds in the special deposit remained unclaimed for a period of five years, such was treated as an unclaimed deposit. If the contents of the safe-deposit box consisted of papers, documents, or letters, the bank was to retain possession of such papers for a period of ten years. If such papers remained unclaimed at that time, they could be destroyed by the bank.
Sections 20 and 21 of S.B. 418, 1915 Mo. Laws 102, 112-113 (presently codified at Sections 361.200 to 361.210, RSMo 1978) and Sections 96 and 163 of S.B. 418, 1915 Mo. Laws 102, 149-150, 187-188 (presently codified at Section 362.390, RSMo 1978) disposed of unclaimed deposits. We believe that Section 108 of S.B. 418 incorporates the procedures therein for the disposition of unclaimed deposits. The State of Missouri thus has a demonstrable legal interest in all the contents of these safe-deposits, other than documents, under S.B. 418.
 B. Common Law Escheat
Section 1.010, RSMo 1978, states:
 The common law of England and all statutes and acts of parliament made prior to the fourth year of the reign of James the First, of a general nature, which are not local to that kingdom and not repugnant to or inconsistent with the Constitution of the United States, the constitution of this state, or the statute laws in force for the time being, are the rule of action and decision in this state, any custom or usage to the contrary notwithstanding, but no act of the general assembly or law of this state shall be held to be invalid, or limited in its scope or effect by the courts of this state, for the reason that it is in derogation of, or in conflict with, the common law, or with such statutes or acts of parliament; but all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof.
Under the common law doctrine of bona vacantia, the Crown took items of personal property not as ultimate owner, but rather for the sole reason that there was no other owner. Comment, Unclaimed Property— A Potential Source of Non-Tax Revenue, 45 Mo. L. Rev. 493, 493 (1980). The doctrine of bona vacantia would appear to have been displaced by Missouri statutory law under Section 1.010, RSMo 1978, to the extent that such statutes are applicable. If it is determined that such statutes are inapplicable, the doctrine of bona vacantia
comes into play to give the state a demonstrable legal interest in the contents of these safe-deposit boxes.
Because of the uncertainty as to whether this property escheats to the State of Missouri or comes under H.B. 1088, we recommend that both CARL and the Office of Administration jointly or separately file claim(s) with the Comptroller of the Currency. Copies of relevant statutory and case law are included for use by the Comptroller's Office in processing this claim.
CONCLUSION
The State of Missouri has a demonstrable legal interest in the contents of safe-deposit boxes recovered from closed national banks that were located in Missouri prior to closing.
Yours very truly,
 JOHN ASHCROFT Attorney General
Enclosures: House Bill No. 1088, 82nd General Assembly, Second Regular Session Jones v. Fidelity Nat. Bank Trust Co. of Kansas City, 362 Mo. 712, 243 S.W.2d 970 (banc 1951) Senate Bill No. 418, 1915 Mo. Laws 102
[1] "RSMo" is used as an abbreviation for the "Revised Statutes of Missouri", and "RSMo Supp." is used as an abbreviation for the "Supplement to the Revised Statutes of Missouri". Section 1.070, RSMo 1978.
[2] The definitions of the term "unclaimed property" found at12 U.S.C. § 216a(2) (1982) and 12 C.F.R. Section 33.3, 48 Fed. Reg. 30007 (Wednesday, June 29, 1983) indicate that the property in question primarily consists of personal property or documents recovered from safe-deposit boxes.
[3] Absent certain extraordinary circumstances, Article III, Section29, Missouri Constitution, and Section 1.130, RSMo 1978, make bills effective ninety days after the adjournment of the legislative session in which they were enacted. Article III, Section 20(a), Missouri Constitution, provides that all bills in either house of the General Assembly are tabled as of midnight on April thirtieth of even-numbered years, and that the General Assembly is automatically adjourned on May fifteenth of even-numbered years. Thus, the Second Regular Session of the Eighty-Second General Assembly of the State of Missouri adjourned on May 15, 1984. Bills passed by that session of the General Assembly and approved by the Governor become effective ninety days thereafter, i.e., August 13, 1984, absent extraordinary circumstances.
[4] Sections 108 and 169 of S.B. 418 are substantially the same, except that Section 108 applied to banks, while Section 169 applied to trust companies. Sections 108 and 169 of S.B. 418 remained in effect and substantially unchanged until the enactment of Section362.485 of S.B. 1, 1967 Mo. Laws 445, 492-494, which created a single statute applicable to banks and trust companies.
[5] The term "bank" was left undefined by S.B. 418. H.B. 610, 1923 Mo. Laws 223, defined the term "bank" in the following manner:
 The term "bank" shall include any person, firm, association or corporation soliciting, receiving or accepting money, or its equivalent, on deposit or as a business, whether such deposit is made subject to check, or is evidenced by a certificate of deposit, a passbook, a note, a receipt, or other writing.
Section 5404 of H.B. 272, 1939 Mo. Laws 796, 800, prohibits private banks in Missouri. Accordingly, the present definition of the term "bank" found at Section 362.010(3), RSMo 1978, omits any reference to persons, firms, or associations as "banks"; otherwise, the present definition is substantially the same as that quoted supra. It should be noted that this definition uses the word "include" and is not all-inclusive. State on inf. Taylor v. Currency Services, Inc.,358 Mo. 983,990, 218 S.W.2d 600, 603 (banc 1949). We believe the above-quoted definition includes national banks.